70 Cal.Rptr.3d 605 (2008)
158 Cal.App.4th 1061
CROWLEY MARITIME CORPORATION, Plaintiff,
v.
BOSTON OLD COLONY INSURANCE COMPANY et al., Defendants, Cross-Complainants and Respondents.
Boston Old Colony Insurance Company et al., Cross-Complainants and Respondents,
v.
West of England Ship Owners Mut. Ins. Assoc. et al., Cross-Defendants and Appellants.
No. A116710.
Court of Appeal of California, First District, Division One.
January 11, 2008.
*607 Dewey & LeBoeuf, Dean Hansell, Esq., Sharon C. Corda, Esq., Flynn, Delich & Wise, James Barton Nebel, Esq., for Plaintiff and Appellant.
Carroll, Burdick & McDonough, David M. Rice, Esq., Laurie J. Hepler, Esq., Rodney L. Eshelman, Esq., for Respondent.
*606 MARCHIANO, P.J.
In this case we cross the Atlantic Ocean to consider the relationship, if any, between domestic and foreign insurance agreements in an arbitration dispute involving equitable contribution between insurance companies. The insured, plaintiff Crowley Maritime Corporation, received indemnification for claims from two of plaintiffs insurers, respondents Boston Old Colony Insurance Company and Glens Falls Insurance Company. These respondents in turn sought equitable contribution from other insurers of plaintiff, including appellants West of England Ship Owners Mutual Insurance Association (Luxembourg) and The United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited.
Appellants, managed in London, petitioned to compel arbitration of respondents' equitable contribution claim under English law, based on appellants' arbitration agreements with their insured plaintiff Crowley Maritime Corporation. The trial court denied the petition on two grounds: (1) the equitable contribution claim does not arise from contract; and (2) respondents are not signatories to the arbitration agreements, and the general rule under both California and federal law is that nonsignatories cannot be compelled to arbitrate.
Appellants claim the trial court erred. We disagree. The equitable contribution claim does not arise from contract, but from equity. Although there are exceptions to the general rule against compelling nonsignatories to arbitrate, the exceptions relied upon by appellants do not apply here. Accordingly, we affirm.

I. FACTS[1]
Plaintiff Crowley Maritime Corporation (Crowley) is a tugboat company operating out of Oakland, California. Two lawsuits were brought against Crowley alleging that two of its tugboat captains had contracted mesothelioma from exposure to asbestos on board Crowley tugboats. Crowley settled both claims in an amount exceeding $6 million.
Crowley sought indemnity from one of its insurers, respondent Boston Old Colony *608 Insurance Company (Boston), which initially only indemnified Crowley for a portion of the settlements. Crowley then sued Boston to recover the balance of the settlements.
Boston cross-complained against Crowley and several third-party insurers who had issued policies to Crowley, including appellants West of England Ship Owners Mutual Insurance Association (Luxembourg) and The United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited. Boston sought declaratory relief and equitable contribution, alleging that sums it paid to Crowley must be "allocated, according to applicable law, among all the Insurer Third Party Defendants." These third party insurer defendants include appellants.
At the same time, respondent Glens Falls Insurance Company (Glens Falls) filed a complaint in intervention seeking similar relief, including equitable contribution.
Respondent Boston, and possibly also respondent Glens Falls, eventually settled with Crowley for the full amount of Crowley's settlements, i.e., the amount in excess of $6 million.
Crowley had apparently amended its original complaint against Boston to add causes of action against appellants, but then dismissed appellants from its lawsuit.
Appellants petitioned the trial court to stay the entire action and to compel arbitration of the equitable contribution dispute. Appellants' petition was based on their arbitration agreements contained in their insurance contracts with Crowley. Appellants, which are organized in Luxembourg and Bermuda and managed out of London, had contracted with Crowley for arbitration in London with resolution of disputes under English law. Respondents opposed the motion to compel arbitration.
Appellants concede that respondents are not parties or signatories to appellants' arbitration agreements with Crowley.
The trial court ruled as follows:
"`The [question] here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement.' (Comer v. Micor, Inc. (9th Cir.2006) 436 F.3d 1098, 1104, [fn. 11,] italics in the original.) `The reciprocal rights and duties 6f several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.' (Amer. Auto. Ins. Co. v. Seaboard Surety Co. (1957) 155 Cal. App.2d 192, 195-196, 318 P.2d 84, ... quoted with affirmation in Signal Companies[,] [Inc.] v. Harbor Ins. Co. (1980) 27 Cal.3d 359, 369, 165 Cal.Rptr. 799, 612 P.2d 889....) In this case, the general rule that a contractual provision for arbitration does not bind an entity which is not a party to the contract applies, no matter whether one applies federal or California law. The court denies the motion."

II. DISCUSSION
Appellants contend that respondents may be compelled to arbitrate the equitable contribution dispute, despite the fact that they are not parties or signatories to the arbitration agreements between appellants and Crowley. In particular, appellants contend that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) applies and mandates arbitration under decisions interpreting the application of FAA to nonsignatories to arbitration agreements.[2]
*609 We disagree with appellants because an equitable contribution claim does not arise from contract but from equity, and because there are no applicable exceptions to the general rule that nonsignatories to an arbitration agreement cannot be compelled to arbitrate.

The Nature of Equitable Contribution
Appellants argue that respondents' equitable contribution claim is "entirely dependent" on their "ability to demonstrate that [appellants] owed contractual benefits to Crowley in a specific amount." Appellants further argue respondents can only prevail if they establish that appellants have a contractual duty to indemnify Crowleyas such, "this case is manifestly founded on, and flows from, the contractual rights of a signatory to the arbitration agreement." Appellants conclude that respondents' claim is contractually related. Appellants maintain that respondents seek to "stand in the shoes" of Crowley, and thus should be required to fulfill Crowley's contractual obligationsspecifically, arbitration.
Respondents contend that appellants have confused equitable contribution with equitable subrogation. Respondents are correct, as we now explain.
"Although the concepts of contribution and subrogation are both equitable in nature, they are nevertheless distinct. [Citations.]" (Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal. App.4th 1279, 1291, 77 Cal.Rptr.2d 296 (Fireman's Fund). Indeed, "the two doctrines are `entirely different' concepts." (Maryland Casualty Co. v. Nationwide Mutual Ins. Co. (2000) 81 Cal.App.4th 1082, 1088, 97 Cal.Rptr.2d 374) [citing and quoting from Fireman's Fund, supra, at p. 1293, 77 Cal.Rptr.2d 296] (Maryland Casualty).)
In the insurance context, equitable subrogation generally involves the substitution of the insurer in the position of its insured in order to seek reimbursement from responsible third parties for the loss paid the insured by the insurer. (Fireman's Fund, supra, 65 Cal.App.4th at pp. 1291-1292, 77 Cal.Rptr.2d 296; see Maryland Casualty, supra, 81 Cal.App.4th at pp. 1088-1089, 97 Cal.Rptr.2d 374.) "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured." (Fireman's Fund, supra, at p. 1292, 77 Cal.Rptr.2d 296.) The subrogated insurer "`stands in the shoes'" of its insured. (Ibid.)
In contrast, equitable' contribution is the right to recover from a co-obligor who shares liability with the party seeking contribution, as when multiple insurers insure the same loss and one insurer has paid more than its share to the insured. (Fireman's Fund, supra, 65 Cal. App.4th at p. 1293, 77 Cal.Rptr.2d 296.) "The right of equitable contribution belongs to each insurer individually." (Id. at p. 1294, 77 Cal.Rptr.2d 296.) It has nothing to do with subrogation to the rights of the insuredindeed, it exists independently of subrogation and is meant to facilitate an equitable distribution of liability for the loss. (Id. at pp. 1294-1296, 77 Cal.Rptr.2d 296; see Maryland Casualty, supra, 81 Cal.App.4th at p. 1089, 97 Cal.Rptr.2d 374.) The right of equitable contribution is not the same as "`standing in the shoes'" of the insured. (Fireman's Fund, supra, at p. 1294, 77 Cal.Rptr.2d 296.)
Furthermore, the right to equitable contribution does not arise from contract, because the multiple insurers who may share responsibility for the same loss have not contracted with each otheronly with their respective insureds. (See Signal *610 Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d 359, 369, 165 Cal.Rptr. 799, 612 P.2d 889; Truck Ins. Exchange v. Unigard Ins. Co. (2000) 79 Cal.App.4th 966, 974, 94 Cal.Rptr.2d 516.)
Appellants contend, in essence, that respondents' equitable contribution claim arises from contract simply because there are contracts involvedi.e., that appellants' contracts with Crowley must be interpreted to provide coverage before respondents can prevail on their claim for contribution. This short-sighted approach overlooks the nature of contribution, and its distinction from subrogation, which we have just discussed.
By seeking equitable contributionas opposed to any right of equitable subrogationrespondents do not "stand in the shoes" of Crowley. Respondents merely seek contribution from other insurers who may be liable to Crowleythrough their own, independent contracts of insurance in order to more equitably share respondents' financial liability. Nothing in the doctrine of equitable contribution would force respondents into Crowley's footwear and render them bound by arbitration agreements that they did not sign.
In their reply brief, appellants cite four decisions for the proposition that a party cannot avoid arbitration by casting its claims in tort rather than contract. (Sweet Dreams Unlimited, v. Dial-A-Mattress Intern. (7th Cir.1993) 1 F.3d 639, 643; Holden v. Deloitte and Touche LLP (N.D.Ill.2005) 390 F.Supp.2d 752, 767; Gulf Guar. Life Ins. v. Connecticut Gen. Life Ins. (S.D.Miss.1997) 957 F.Supp. 839, 842; Metalclad Corp. v. Ventana Environmental Organizational Partnership (2003) 109 Cal.App.4th 1705, 1717-1718, 1 Cal. Rptr.3d 328 (Metalclad).)[3]
By itself, the proposition is irrelevant to this case. But appellants argue that, these cases decry the supposed "formalistic reasoning" of respondents that equitable contribution does not arise: from; contract. Apparently, appellants argue that labels do not matter, that it makes no difference whether something sounds in contract, tort, or equity. But the labels of equitable contribution and equitable subrogation are of different colors, contain different information, and are 6n qualitatively different bottles.
The trial court correctly denied the motion to compel on the ground that equitable contribution arises not from contract but from equity.

Compelling a Nonsignatory to Arbitrate
Appellants contend that respondents may be compelled to arbitrate despite their not having signed the arbitration agreements between appellants and Crowley. We disagree for the following reasons.
We acknowledge the strong public policy in favor of arbitration under both federal and California law. (Moses H. Cone Hospital v. Mercury Constr. Corp. (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765; Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 96-97, 99 Cal.Rptr.2d 745, 6 P.3d 669; Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 323, 197 Cal.Rptr. 581, 673 P.2d 251.)
But the public policy in favor of arbitration has a crucial caveat. "[Arbitration assumes that the parties have elected to use it as an alternative to the judicial process. [Citation.] Arbitration is consensual in nature." (County of Contra Costa v. Kaiser Foundation Health Plan, *611 Inc. (1996) 47 Cal.App.4th 237, 244, 54 Cal.Rptr.2d 628 (Contra Costa).) The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate. (Balandran v. Labor Ready, Inc. (2004) 124 Cal.App.4th 1522, 1528, 22 Cal.Rptr.3d 441; In re Tobacco Cases I (2004) 124 Cal.App.4th 1095, 1104, 21 Cal.Rptr.3d 875 (Tobacco Cases).) Rather, "`[t]he right to arbitration depends upon contract[,]'" (Tobacco Cases, supra, at p. 1104, 21 Cal.Rptr.3d 875) and the scope of arbitration "is, of course, a matter of agreement between the parties." (Ericksen, supra, 35 Cal.3d at p. 323, 197 Cal.Rptr. 581, 673 P.2d 251.)
The guiding principle is simple: "A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration. [Citation.]" (Contra Costa, supra, 47 Cal.App.4th at p. 245, 54 Cal. Rptr.2d 628.) Federal law is in accord. (Volt Info. Sciences v. Leland Stanford Jr. U. (1989) 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 [FAA does not require arbitration when parties have not agreed to arbitrate]; see EEOC v. Waffle House, Inc. (2002) 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (Waffle House).) "It goes without saying that a contract cannot bind a nonparty." (Waffle House, supra, at p. 294,122 S.Ct. 754.)
Under both California and federal law, there are exceptions to the rule that a nonsignatory to an arbitration agreement cannot be compelled to arbitrate.
Under California law, a nonsignatory can be compelled to arbitrate under two sets of circumstances: (1) where the nonsignatory is a third party beneficiary of the contract containing the arbitration agreement; and (2) where "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." (Contra Costa, supra, 47 Cal.App.4th at p. 242, 54 Cal.Rptr.2d 628; see Matthau v. Superior Court (2007) 151 Cal.App.4th 593, 599-600, 60 Cal.Rptr.3d 93 (Matthau).)
The preexisting relationship generally gives the party to the agreement authority to bind the nonsignatory. Examples of the preexisting relationship include agency; spousal relationship; parent-child relationship; and the relationship of a general partner to a limited partnership. (Matthau, supra, 151 Cal.App.4th at p. 599, 60 Cal.Rptr.3d 93; Buckner v. Tamarin (2002) 98 Cal.App.4th 140, 142, 119 Cal. Rptr.2d 489; Contra Costa, supra, 47 Cal. App.4th at pp. 242-243, 54 Cal.Rptr.2d 628.) In the absence of such a relationship, or third party beneficiary status, courts will generally not compel a nonsignatory to arbitrate. (Matthau, supra, at pp. 599-600, 60 Cal.Rptr.3d 93; NORCAL Mutual Ins. Co. v. Newton (2000) 84 Cal. App.4th 64, 76, 100 Cal.Rptr.2d 683; see Nguyen v. Tran 157 Cal.App.4th 1032, 1035-1040, 68 Cal.Rptr.3d 906 [holding that a nonsignatory agent could compel arbitration against its own principal, but not against another nonsignatory which was not party to any arbitration agreement and had no contractual relationship with the nonsignatory agent].)
Obviously, respondents have no such preexisting relationship with appellants, and respondents are not third party beneficiaries of appellants' contracts with Crowley. Appellants do not contend otherwise. Rather, appellants rely on federal law.
The decisional law interpreting FAA provides that a nonsignatory may be bound to an arbitration agreement pursuant to ordinary principles of contract law. (Comer v. Micor, Inc., supra, 436 F.3d 1098, 1101 (Comer); Fisser v. International *612 Bank (2nd Cir.1960) 282 F.2d 231, 233 & 233-234, fn. 6.) "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.' [Citation.] In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. [Citation.]" (Comer, supra, at p. 1101.)
Appellants rely on the principle of equitable estoppel. Under this principle, a nonsignatory "is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. [Citations.]" (Zurich American Ins. Co. v. Watts Industries, Inc. (7th Cir.2005) 417 F.3d 682, 688 (Zurich); see Comer, supra, 436 F.3d at p. 1101 [estoppel compels arbitration when "nonsignatory `knowingly exploits'" the contract containing the arbitration clause].)
"But [case law] consistently requires a direct benefit under the contract containing an arbitration clause before a reluctant party can be forced into arbitration. [Citations.]" (Zurich, supra, 417 F.3d at p. 688.) For example, a nonsignatory to a contract was compelled to arbitrate where it received the direct benefits under the contract of a lower insurance rate and the right to sail under the flag of France. (American Bureau Shipping v. Tencara Shipyard S.P.A. (2nd Cir.1999) 170 F.3d 349, 353.)
In their opening brief, appellants argued that respondents are equitably estopped from refusing arbitration because they "stand in the shoes" of Crowley and "are attempting to obtain benefits potentially payable to the signatory under the insurance contract containing the agreement to arbitrate." Appellants relied on a number of cases which involved either subrogation (Lumbermens Mutual Casualty Co. v. Borden Co. (S.D.N.Y.1967) 268 F.Supp. 303, 314) or various types of direct action to seek the benefits of a contract, generally by a party, someone "standing in the shoes" of a party, or a third party beneficiary. (See, e.g., Aasma v. American S.S. Owners Mut. Prot. & Indem. (6th Cir. 1996) 95 F.3d 400, 405 [direct action against an insurer by employees of bankrupt insured to seek benefits under insurance contract] (Aasma); Federico v. Charterers Mut. Assur. Ass'n Ltd. (E.D.Pa.2001) 158 F.Supp.2d 565, 574-575 [third party beneficiary "standing in the shoes" of an original contracting party and seeking benefit' of insurance contract] (Federico).)
A common theme in these cases is that the party seeking relief was suing on the contract itself, not a statute or some other basis outside the contract. (See, e.g., Aasma, supra, 95 F.3d at p. 405; Federico, supra, 158 F.Supp.2d at pp. 574-575; Cheshire Place v. West of England Ship Owners Mut. (E.D.N.Y.1993) 815 F.Supp. 593, 597.)
Here respondents are not suing for direct benefits under the insurance contracts with Crowley, but are suing on the noncontractual ground of equitable contribution. They do not "stand in the shoes" of Crowley. As respondents phrase it, they "are seeking to recover from Crowley's other insurers benefits [Respondents have provided to Crowley. In other words, the basis for [Respondents' claims is not contractual rights against, the [a]ppellants, but rather equitable rights against [a]ppellants and Crowley's other insurers."
In the context of this argument in their respondents' brief, respondents noted that appellants' cases were distinguishable, as we have discussed above.
In their reply brief, appellants replied to respondents' arguments but added two additional points: that equitable estoppel was justified by two so-called "broader" tests *613 drawn from the case law of the Fourth and Eleventh Circuits. These two additional points were supported by decisions not cited in the opening brief: Brantley v. Republic Mortg. Ins. Co. (4th Cir.2005) 424 F.3d 392 (Brantley); MS Dealer Service Corp. v. Franklin (11th Cir.1999) 177 F.3d 942 (MS Dealer); and J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A. (4th Cir. 1988) 863 F.2d 315 (J.J.Ryan).)[4]
Points raised for the first time in the reply brief are generally not considered, out of fairness to the respondent. (Scott v. CIBA Vision Corp. (1995) 38 Cal. App.4th 307, 322, 44 Cal.Rptr.2d 902.) In any case, the points are unpersuasive as we now explain.
Brantley and MS Dealer, which supposedly justify estoppel where a claim refers to, arises from, and relates directly to an agreement containing an arbitration clause, involve cases where a signatory is estopped from preventing arbitration when it invokes the terms of a contract in litigation against a nonsignatory. (Brantley, supra, 424 F.3d at pp. 395-396; MS Dealer, supra, 111 F.3d at pp. 946-948.) Fairness compels such an estoppel when one sues on an agreement but attempts to avoid certain of its termssuch as an arbitration clause. Obviously, that is not the case in the matter before us.
J.J. Ryan simply held that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." (J.J. Ryan, supra, 863 F.2d at pp. 320-321.) This holding is irrelevant to the present case.
The reply brief also raised, for the first time, an argument based on three California decisions not cited inbut predating the opening brief: Turtle Ridge Media Group, Inc. v. Pacific Bell Directory (2006) 140 Cal.App.4th 828, 44 Cal.Rptr.3d 817 (Turtle Ridge); Boucher v. Alliance Title Co., Inc. (2005) 127 Cal.App.4th 262, 25 Cal.Rptr.3d 440 (Boucher); and Metalclad, supra, 109 Cal.App.4th 1705, 1 Cal. Rptr.3d 328.
Boucher and Metalclad are distinguishable. Both involve the invocation of equitable estoppel against a signatory suing a nonsignatory on a contract and attempting to avoid the arbitration clause. (Boucher, supra, 127 Cal.App.4th at pp. 265, 267-272, 25 Cal.Rptr.3d 440; Metalclad, supra, 109 Cal.App.4th at pp. 1708, 1713-1719, 1 Cal. Rptr.3d 328.)[5]
Turtle Ridge is likewise distinguishable. In that case, SBC Smart Yellow Pages (SBC) contracted with Clientlogic Operating Company, Inc. (Clientlogic) to deliver telephone books. The contract contained an arbitration clause. SBC expressly authorized Clientlogic to subcontract work with Turtle Ridge Media Group, Inc. (Turtle Ridge). Clientlogic entered into a subcontract with Turtle Ridge. The subcontract incorporated the contract between SBC and Clientlogic. (Turtle Ridge, supra, 140 Cal.App.4th at pp. 830-831, 44 Cal.Rptr.3d 817.)
*614 SBC terminated its contract with Clientlogic, which in turn terminated its contract with Turtle Ridge. Turtle Ridge sued SBC. SBC petitioned to compel arbitration, arguing that the lawsuit arose from the subcontract which had incorporated the contractincluding the arbitration clause. The trial court denied the petition because there was no direct contractual relationship between SBC and Turtle Ridge. (Turtle Ridge, supra, 140 Cal. App.4th at pp. 831-832, 44 Cal.Rptr.3d 817.)
The Court of Appeal reversed. The court spoke in terms of equitable estoppel, citing Boucher and Metalclad. (Turtle Ridge, supra, 140 Cal.App.4th at p. 833, 44 Cal.Rptr.3d 817.) But the court actually based its ruling on incorporation by reference. "The following emerges from our consideration of the contract and subcontract together: SBC and Clientlogic expressly agreed to arbitrate any disputes. Their agreement was expressly incorporated by reference in the subcontract between Turtle [Ridge] and Clientlogic. Although the subcontract explicitly excluded certain SBC/Clientlogic terms in the incorporation process, the arbitration clause was not one of them. The result was that either expressly or by incorporation each agreement contained an arbitration provision." (Id. at p. 834, 44 Cal.Rptr.3d 817, italics added.)
Unlike Turtle Ridge, the parties in the present case are not parties to an agreement containing an arbitration provision by estoppel or by incorporation by reference.

Conclusion
The trial court correctly denied the petition to compel arbitration. Given this conclusion, we need not reach appellants' remaining contentions.

III. DISPOSITION
The order denying the petition to compel arbitration is affirmed.
We concur: STEIN and MARGULIES, JJ.
NOTES
[1] We state the facts with this proviso: there were no factual findings by the trial court, and the parties take the facts from pleadings and other documents in the record. The material facts are not in dispute.
[2] Appellants invoke FAA because they are foreign insurers and their contracts with Crowley involve international commerce. We note that appellants initially invoke Chapter 2 of FAA, the Convention on the Recognition and Enforcement of Foreign Arbitration Awards, but base their arguments on Chapter 1, the domestic component of FAA, which they state applies to their agreements with Crowley so long as there is no conflict with Chapter 2. We agree with respondents that appellants "do not argue that there is any relevant conflict."
[3] These four cases are not cited in the opening brief.
[4] The opening brief in the present case was filed April 30, 2007.
[5] Likewise distinguishable is a case cited by appellants at oral argument: Rowe v. Exline (2007) 153 Cal.App.4th 1276, 63 Cal.Rptr.3d 787. In that case individual nonsignatory defendants were allowed to require arbitration against a signatory plaintiff. But the plaintiff sued the nonsignatories as alter egos to a corporate signatory, and on causes of action directly based on a contract and seeking recovery under contract terms. (Id. at pp. 1279-1281, 1284-1287, 63 Cal.Rptr.3d 787.)