Filed 3/10/22  Ambulnz Health v. Summers CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMBULNZ HEALTH, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MICHAEL S. SUMMERS, <br><br> Defendant and Appellant. | B307874 <br><br> (Los Angeles County <br> Super. Ct. No. BC682875) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Judge.  Reversed with directions.

Law Offices of Lee E. Burrows, Lee E. Burrows, and Linda H. Bennett for Defendant and Appellant.

Kawahito Law Group and James K. Kawahito; and David Feuerstein for Plaintiff and Respondent.

# INTRODUCTION

Ambulnz Health, LLC agreed to buy the assets of Americare Medservices, Inc. Both companies are in the medical transportation business. The asset purchase agreement included a provision requiring Ambulnz and Americare to arbitrate any dispute arising between the parties to the agreement. Americare's chief executive officer and sole shareholder, Michael S. Summers, separately agreed to and signed, in his individual capacity, two specific provisions of the agreement prohibiting him from negotiating with anyone else to sell Americare's assets and from competing with Ambulnz or soliciting Ambulnz's employees and clients after the sale. Summers did not sign, and was not a party to, the arbitration provision.

After a dispute arose, Ambulnz filed a lawsuit asserting claims against Americare and Summers. Ambulnz filed a motion to compel both Americare and Summers to arbitrate those claims, which Summers (but not Americare) opposed. The trial court granted Ambulnz's motion to compel arbitration, an arbitrator issued an award against Americare and Summers, and the trial court confirmed the award.

Summers appeals from the judgment confirming the arbitration award, contending the trial court erred in compelling him to arbitrate Ambulnz's claims against him. Essentially, Ambulnz argues that, although Summers was not a party to the arbitration provision in the asset purchase agreement, Ambulnz can compel Summers to arbitrate its claims against him because he was the sole shareholder of Americare. Summers argues his status as a sole shareholder was not enough for Ambulnz to

2

compel him to arbitrate its claims against him in his individual capacity. Under California law, Summers is correct. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Americare Sells Its Assets to Ambulnz*

In September 2016 Ambulnz and Americare entered into an asset purchase agreement providing that Ambulnz would buy Americare's assets for $4 million. The agreement provided that any "dispute that arises between the Parties to this Agreement shall be subject to arbitration in accordance with the then current ADR Services, Inc. rules . . . ."

Summers signed the signature page of the agreement on behalf of Americare, as its chief executive officer. Summers also signed a separate block on the signature page as an individual and "owner," but only "[w]ith respect to" two provisions of the agreement: section 5.4 (titled "No Negotiation") and section 8.6 (titled "Non-Competition/Non-Solicitation"). Section 5.4 prohibited Americare and its "shareholders, directors, [and] officers" (which included Summers) from negotiating with others about selling Americare's assets. Section 8.6 prohibited Americare and its "Owners" (which again included Summers), for four years after the closing date of the sale, from competing with Ambulnz or hiring or recruiting any of Ambulnz's employees or independent contractors. The arbitration provision was in section 10 of the agreement.

B.    *Ambulnz Initiates Arbitration Proceedings and Files This Action Against Americare and Summers*

In September 2017 Ambulnz filed a demand for arbitration against Americare and Summers.  Ambulnz alleged Americare and Summers breached the asset purchase agreement by, among other things, making false representations and failing to disclose information about Americare's assets and business operations and by preventing Ambulnz from accessing Americare's information technology systems and records.  In November 2017 Ambulnz filed a complaint in superior court, asserting causes of action for declaratory relief against Americare and Summers and for conversion and intentional interference with contractual relations against Summers.

C.    *The Trial Court Grants Ambulnz's Cross-motion To Compel Arbitration of All Claims*

Americare filed a motion under Code of Civil Procedure sections 1281.2 and 1281.4 to compel Ambulnz to arbitrate the claims asserted against Americare (but not the claims asserted against Summers) and to stay the action pending completion of the arbitration.[1]  Ambulnz filed a cross-motion to compel arbitration of all its claims, including those against Summers.  Ambulnz argued the trial court should compel Summers to arbitrate Ambulnz's claims against him because Summers was an "agent-employee" of Americare, Summers was a "third party beneficiary" of the asset purchase agreement, and there was an "'identity of interest' between Americare and Mr. Summers."  Ambulnz also argued Summers was estopped from arguing the

---

[1]    Statutory references are to the Code of Civil Procedure.

4

arbitration provision in the asset purchase agreement did not apply to him because he "benefitted financially" from the agreement. Summers argued he had not agreed to arbitrate claims against him in his individual capacity. He also argued that signing the agreement as an officer of Americare did not require him to arbitrate the claims against him personally.

The trial court granted Ambulnz's cross-motion and compelled arbitration of all Ambulnz's claims, including those against Summers. The court ruled Summers was bound by the arbitration provision because he was a third party beneficiary of the asset purchase agreement. The court found that Summers benefited from the agreement because he owned Americare and that he had an identity of interest with Americare, as "further demonstrated by the fact that he personally agreed not to compete with" Ambulnz.

D.     *The Court Confirms the Arbitration Award and Enters Judgment*

Ambulnz, Americare, and Summers participated in the arbitration. The arbitrator ultimately issued a $470,326 award in favor of Ambulnz, with Americare liable for the entire $470,326 and Summers jointly and severally liable for $86,896 of the $470,326. The trial court granted Ambulnz's petition to confirm the award and entered judgment. Summers timely appealed.

5

# DISCUSSION

## A. *Applicable Law and Standard of Review*

Under section 1281.2 "a trial court shall order arbitration of a controversy if an agreement to arbitrate the controversy exists . . . ." (*Gordon v. Atria Management Co., LLC* (2021) 70 Cal.App.5th 1020, 1026; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 & fn. 2.) But in general*,* "'parties can only be compelled to arbitrate when they have agreed to do so. [Citation.] "Arbitration . . . is a matter of consent, not coercion."'" (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858-859 (*Cohen*); see *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "While California public policy favors arbitration, "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.'"" (*Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 461; accord, *Gamboa*, at p. 166; *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 590.)

Ambulnz does not argue, and the trial court did not rule, Summers agreed to arbitrate Ambulnz's claims against him personally. Indeed, Summers in his individual capacity was a party to only two sections of the asset purchase agreement, neither of which mentioned arbitration. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal. 4th at p. 236 ["'[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate"]; *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967 [an essential element of any arbitration contract "'is the

6

consent of the parties or mutual assent,'" which "'is determined under an objective standard applied to the outward manifestations or expressions of the parties'"].)  The issue is whether Summers, as a nonsignatory to the arbitration agreement, was nonetheless bound by it.

Under some circumstances ""'nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement.'"" (*Cohen, supra*, 31 Cal.App.5th at p. 859; see *Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 468; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.)  In California ""'there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.'"" (*Cohen*, at p. 859; see *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 657 & fn. 6; *Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 841; *Benaroya*, at p. 469; *Suh*, at p. 1513.)  As stated, the trial court ruled Ambulnz could compel Summers to arbitrate its claims against him because he was a third party beneficiary of the agreement. Ambulnz also argued Summers was estopped from arguing the arbitration provision did not apply to Ambulnz's claims against him, but the trial court did not reach that argument.

On review of an order granting a petition to compel arbitration, "'if there are material facts in dispute, we must accept the trial court's resolution of such disputed facts when supported by substantial evidence.'" (*Cohen, supra*, 31 Cal.App.5th at p. 859; accord, *Jones v. Jacobson* (2011)

7

195 Cal.App.4th 1, 12.)[2]  But here, the only facts the trial court relied on in compelling Summers to arbitrate Ambulnz's claims were not in dispute—namely, that Summers was the sole shareholder of Americare; that Americare was a signatory to the asset purchase agreement, which provided that Ambulnz would pay Americare $4 million and included an arbitration provision; and that Summers, in his individual capacity, agreed only to the nonsolicitation and noncompete provisions of the agreement.[3] Therefore, our review of the trial court's order is de novo. (See *Banc of California, National Assn. v. Superior Court* (2021) 69 Cal.App.5th 357, 367 ["Where the evidence is not in conflict, we review de novo the trial court's ruling on a petition to compel arbitration."]; *Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.*, *supra*, 44 Cal.App.5th at p. 841 ["where there is no disputed extrinsic evidence . . . a trial court's [ruling on] a petition to enforce an arbitration agreement is reviewed de novo"]; see also *Cohen*, at p. 859 ["""Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review.""""]; *Benaroya v. Willis*, *supra*, 23 Cal.App.5th at p. 468 [same].)

---

[2]     "An order granting a petition to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award."  (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94; accord, *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 943.)

[3]     Ambulnz contends these facts are sufficient to support the trial court's order granting the petition to compel arbitration; Ambulnz does not contend any other evidence supported the trial court's order.

B.     *The Trial Court Erred in Compelling Summers To Arbitrate Ambulnz's Claims Against Him*

1.     *Summers Was Not a Third Party Beneficiary of the Asset Purchase Agreement*

""""A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit." [Citation.]  ""The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.""""" (*Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 677 (*Pillar Project*); see *Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 301.)  But a "'third party who is only incidentally benefited by performance of a contract is not entitled to enforce it.  [Citation.]  '"The fact that . . . the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment.""""  (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 890; accord, *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1034; see *Pillar Project*, at p. 671 [the ""mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary'""""].)  Instead, it """"must appear to have been the intention of *the parties* to secure to [the third party beneficiary] personally the benefit of its provisions.""""  (*Grossmont*, at pp. 890-891.)

The court ruled Summers was a third party beneficiary of the asset purchase agreement because, as the sole shareholder of Americare, he benefitted from the agreement.  Summers's status as a sole shareholder, however, was not enough.  "It is

9

fundamental that a corporation is a legal entity that is distinct from its shareholders." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108; accord, *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 305.) When a corporation obtains funds or assets—for example, through a successful lawsuit or, as here, a purchase agreement—"the corporation is the only party that benefits . . . ; the shareholders derive no benefit "'except the indirect benefit resulting from a realization upon the corporation's assets.'"'" (*Grosset*, at p. 1108; see *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150.)

The purchase agreement required Ambulnz to pay $4 million to Americare, not to Summers. (See *Eastern Aviation Group, Inc. v. Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452 [when "a purchaser meets its obligation to pay the seller, the purchaser normally is not concerned with the seller's disposition of the proceeds"].) And nothing in the agreement allowed Summers, in his individual capacity, to receive the $4 million or to sue Ambulnz if it failed to comply with the terms of the agreement. (See *Grosset v. Wenaas*, *supra*, 42 Cal.4th at p. 1108 [because "a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it"].)

True, as the sole shareholder of Americare, Summers may have stood to benefit indirectly if Ambulnz paid Americare the $4 million the asset purchase agreement required Ambulnz to pay (assuming $4 million was a fair price for Americare's assets and depending on Americare's other assets and liabilities). But that a contract, if carried out according to its terms, would inure to a third party's benefit is not sufficient to show the party is a third party beneficiary of the agreement. (*Grossmont Union High*

*School Dist. v. State Dept. of Education, supra,* 169 Cal.App.4th at p. 890.) Because the agreement did not confer a personal benefit on Summers, he was not a third party beneficiary of the agreement and therefore was not bound by the arbitration provision. (See *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 992 [president and majority shareholder was not a third party beneficiary of a corporation's licensing agreement and therefore was not bound by an arbitration provision in the agreement]; *Seretti v. Superior Nat. Ins. Co.* (1999) 71 Cal.App.4th 920, 930-931 [shareholders of a small, closely held corporation were not third party beneficiaries of the corporation's contract with a workers' compensation insurer]; *Mariani v. Price Waterhouse* (1999) 70 Cal.App.4th 685, 701-702 [majority shareholders, including the chairman of the board, were not third party beneficiaries of a corporation's contract with an auditor]; *Consolidated Edison, Inc. v. Northeast Utilities* (2d Cir. 2005) 426 F.3d 524, 527 [shareholders were not third party beneficiaries of a corporation's merger agreement with another corporation]; *Sherman v. British Leyland Motors, Ltd.* (9th Cir. 1979) 601 F.2d 429, 439 [president and sole shareholder of a car dealership organized as a corporation was not a third party beneficiary of the corporation's franchise agreement]; compare *Crain v. Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509, 523, fn. 12 [shareholders were third party beneficiaries of a corporation's financing agreement with a lender where "the agreement specifically provide[d] that [lender] owe[d] a duty to benefit" the corporation's shareholders].)[4]

---

[4] Nor did the fact Summers was the sole shareholder of Americare, rather than one of several shareholders, make him a

11

In addition, section 11.4 of the asset purchase agreement stated: "Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any Person other than the parties to it and their respective successors and assigns, . . . nor shall any provision give any third Person any right of subrogation or action over or against any party to this Agreement." To the extent there was any doubt about whether Summers was a third party beneficiary of the agreement, this provision confirmed he was not. (See *Balsam v. Tucows Inc.* (9th Cir. 2010) 627 F.3d 1158, 1163 [a "No Third Party Beneficiaries" clause in an agreement between two companies "unambiguously manifest[ed] an intent *not* to create any obligations to third parties"].)

The trial court relied on *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511 in ruling Summers was a third party beneficiary of the agreement. In that case, RN Solution agreed to recruit nurses for Catholic Healthcare West, an operator of medical facilities. (*Id.* at p. 1513.) The agreement included a mandatory arbitration provision. (*Id.* at p. 1514.) RN Solution and its chief executive officer sued Catholic Healthcare West and its vice president. The court held the chief executive officer, despite "sign[ing] the arbitration agreement only in her capacity as [RN Solution]'s president and

_____

third party beneficiary of the asset purchase agreement. (See *Maxwell Cafe, Inc. v. Department of Alcoholic Beverage Control* (1956) 142 Cal.App.2d 73, 78 ["Mere ownership of all the stock and control and management of a corporation by one or more individuals is not of itself sufficient to warrant disregarding the corporate entity."]; see also *Benasra v. Marciano, supra*, 92 Cal.App.4th at pp. 992-993 [following *Maxwell Cafe*].)

[chief executive officer]," was a third party beneficiary of the agreement because she "benefited financially and professionally from the recruitment agreement between [RN Solution] and [Catholic Healthcare West], as alleged in her complaint." (*Id.* at p. 1520.)  The court did not discuss how the chief executive officer benefitted "financially and professionally" from the agreement, nor was there any indication that the officer was a shareholder of RN Solution, much less that she only benefitted from the agreement indirectly because she owned shares in RN Solution.  Thus, *RN Solution* has little relevance here.  And in *RN Solution* the chief executive officer, unlike Summers, was the plaintiff, attempting to assert various claims under the applicable agreement while simultaneously attempting to avoid the agreement's arbitration provision.  (*Id.* at pp. 1516-1517; see *Pillar Project*, *supra*, 64 Cal.App.5th at p. 678 ["'By relying on contract terms . . . , even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.'"].)[5]

Ambulnz argues the inclusion of the term "Parties" in the arbitration provision "clearly establishe[d]" Ambulnz and

---

[5]     Ambulnz also cites *Brilliant Info Corp. v. Moso Power Tech (HK) Internat. Ltd.* (C.D.Cal. Oct. 29, 2015, No. CV 15-3090) 2015 WL 12766589.  In that case the district court ruled a sole shareholder was bound by an arbitration provision in the corporation's distribution agreement with a manufacturer.  (*Id.* at p. 5.)  The district court concluded the shareholder was a third party beneficiary because "[a]ny money flowing" to the corporation under the agreement "necessarily flow[ed]" to the shareholder.  (*Ibid.*)  The district court, however, was interpreting the agreement under the Federal Arbitration Act, not the California Arbitration Act.

13

Americare intended to bind Summers to the arbitration provision.  This argument fails.  The asset purchase agreement did not define the term "Parties," let alone define "Parties" as Ambulnz, Americare, and Summers.  Indeed, the parties used a different defined term when they wanted to refer to and include Summers: "Seller Parties," which in Section 5.1 they agreed would mean "Seller [Americare], its Owners, directors, employees, contractors, agents or otherwise."  Moreover, the two provisions of the agreement Summers did sign in his individual capacity, section 5.4 and section 8.6, did not include the term "Parties."  To the contrary, those two provisions included language specifically referring to Summers:  Section 5.4 prohibited Americare and its "shareholders" and "officers" (i.e., Summers) from negotiating with third parties, and Section 8.6 prohibited Americare and its "Owners" (again, Summers) from competing with Ambulnz or hiring or recruiting any of Ambulnz's employees or independent contractors.  Reference to "shareholders," "officers," and "owners" in the two provisions Summers signed in his individual capacity indicates Ambulnz and Americare did not intend to bind Summers to provisions he did not sign, including the arbitration provision.  (Cf. *Harris v. Superior Court*  (1986) 188 Cal.App.3d 475, 479 [doctor employed by a medical group was a third party beneficiary of an arbitration agreement requiring patients to arbitrate claims against "'employees or other contracting health professionals'" of the medical group].)

14

### 2. *Summers Was Not Estopped from Arguing the Arbitration Provision Did Not Apply to Him*

"'The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances.'" (*Pillar Project*, *supra*, 64 Cal.App.5th at p. 677; see *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268.) "One such circumstance is that '[a] nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are "dependent upon, or inextricably intertwined with" the underlying contractual obligations of the agreement containing the arbitration clause.'" (*Pillar Project*, at p. 677; see *Jensen v. U-Haul Co. of California, supra,* 18 Cal.App.5th at p. 306.) "Another is that '"[a] nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'"'" (*Pillar Project*, at pp. 677-678; accord, *Boucher,* at p. 269; see *McArthur v. McArthur* (2014) 224 Cal.App.4th 651, 658.) Relying on the latter estoppel theory, Ambulnz argues Summers was estopped from avoiding the arbitration provision because, as the sole shareholder of Americare, he received a direct benefit from the agreement: the $4 million purchase price.

As discussed, however, the $4 million was not a "direct benefit" Summers received from the agreement. The agreement required Ambulnz to pay Americare the $4 million; Summers only had the potential to receive an indirect benefit from whatever net proceeds Americare received. (*Grosset v. Wenaas, supra*, 42 Cal.4th at p. 1108; see *Pillar Project*, *supra*, 64 Cal.App.5th at p. 680 ["We are unwilling to extend" the equitable estoppel doctrine to "a plaintiff who has received only indirect or remote benefits from a contract containing an

15

arbitration clause."]; *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070-1071 [case law "'consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration'"].) Indeed, "'[p]ersons are not normally bound by an agreement entered into by a corporation in which they have an interest . . . .'" (*Cohen, supra,* 31 Cal.App.5th at p. 861; see *Suh v. Superior Court, supra,* 181 Cal.App.4th at p. 1513.) Ambulnz's argument Summers was estopped from refusing to arbitrate simply because he owned shares in a corporation that sold assets under an agreement that included an arbitration provision is inconsistent with this rule.

Moreover, the purpose of binding a nonsignatory to an arbitration agreement under the doctrine of equitable estoppel is to prevent the nonsignatory from "'"claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."'" (*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc., supra,* 44 Cal.App.5th at p. 841; accord, *Comer v. Micor, Inc.* (9th Cir. 2006) 436 F.3d 1098, 1101; see *Crowley Maritime Corp. v. Boston Old Colony Ins. Co., supra,* 158 Cal.App.4th at p. 1070 ["a nonsignatory 'is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause'"].) Summers did not knowingly seek the benefits of the asset purchase agreement—at least not in his individual capacity. Summers signed the agreement on behalf of Americare and personally agreed to certain provisions of the agreement (but not the arbitration provision). Summers did not seek to enforce the agreement against Americare or claim any rights under the agreement. (See *Jensen v. U-Haul Co. of California, supra,* 18 Cal.App.5th at

p. 306 ["'the basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent'"]; *Comer*, at p. 1102 [trust participant was not estopped from avoiding arbitration provisions in investment management agreements where the participant "did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them"].)  It was Ambulnz who sued Summers and demanded he arbitrate.

## DISPOSITION

The judgment against Summers is reversed.  Summers is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.


17