Filed 9/20/23  Shakespeare v. National Steel and Shipbuilding Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| ARCHIE SHAKESPEARE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATIONAL STEEL AND SHIPBUILDING COMPANY,<br><br>Defendant and Appellant. | D081270<br><br><br>(Super. Ct. No. 37-2021-00013962-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Quarles & Brady, E. Joseph Connaughton, Evan A. Peña, and Kelly E. Kagan for Defendant and Appellant.

Peter R. Dion-Kindem; The Blanchard Law Group and Lonnie C. Blanchard, III for Plaintiff and Respondent.

## I

## INTRODUCTION

National Steel and Shipbuilding Company (NASSCO) appeals an order denying its petition to compel arbitration of a wage and hour complaint

brought by its alleged former employee Archie Shakespeare. The trial court denied the petition on grounds that NASSCO failed to establish the existence of an arbitration agreement between NASSCO and Shakespeare. We affirm.

II

BACKGROUND

Shakespeare filed the operative complaint against his putative former employers, NASSCO and Ameri-Force Craft Services, Inc. (Ameri-Force). In relevant part, he alleged NASSCO violated wage and overtime laws by failing to pay its non-exempt employees for time spent going through workplace security checkpoints, donning and doffing personal protective equipment, having their temperatures checked, and traveling between security checkpoints and their workplace sites. Further, he alleged NASSCO failed to pay wages due on termination, violated wage statement laws, and violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.). He filed his claims on an individual basis, on behalf of a putative class of non-exempt NASSCO employees, and on a representative basis under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA).

NASSCO petitioned to compel arbitration of the case. It argued that it entered into collective bargaining agreements (CBAs) with two labor unions that represent most of the non-exempt employees Shakespeare seeks to represent on a class or representative basis. The CBAs govern the terms of employment for unionized employees on matters such as hours, wages, and overtime. All of the CBAs provide that disputes concerning the interpretation or application of the CBAs may be referred to arbitration if the disputes are not resolved through an internal grievance procedure. Some of the CBAs state that NASSCO and its unionized employees must arbitrate

2

any "claims arising out of employment," including wage and hour claims, on an individual basis.

Shakespeare opposed the petition to compel arbitration. He argued that NASSCO failed to establish that he accepted, or was otherwise bound by, an arbitration agreement. In particular, he claimed he never signed, and was not subject to, the CBAs executed by NASSCO and the labor unions.

NASSCO filed a reply in support of its arbitration petition. It did not argue that Shakespeare accepted, or was otherwise bound by, its CBAs. On the contrary, it claimed Shakespeare was never a NASSCO employee and, therefore, he was never a member of the labor unions that executed the CBAs on behalf of their members. According to NASSCO, Shakespeare was an employee of codefendant Ameri-Force, a staffing agency that purportedly dispatched Shakespeare to work for NASSCO on a temporary basis.

The trial court denied the petition to compel arbitration. It found NASSCO did not "put forth any evidence to show that [Shakespeare] entered any agreement to arbitrate his dispute. Nor did NASSCO show in its moving papers that some other theory or doctrine warrant[ed] concluding that any of the arbitration provisions in the CBAs would apply to [Shakespeare], an alleged non-represented employee."

NASSCO appeals the order denying its petition to compel arbitration.[1]

III

DISCUSSION

" ' "[T]he threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate." ' [Citation.] While both the Federal Arbitration Act (9 U.S.C. § 1 et seq.; the FAA) and

---

[1] The trial court also denied a request from NASSCO to strike the class and representative allegations from Shakespeare's complaint. NASSCO does not challenge this ruling in this appeal.

California law favor arbitration, a party is not required to arbitrate his or her claims absent consent." (*Costa v. Road Runner Sports, Inc.* (2022) 84 Cal.App.5th 224, 233; see *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252 ["[B]ecause '[a]rbitration is strictly "a matter of consent" ' [citations], ' "a party cannot be required to submit to an arbitration any dispute which he has not agreed so to submit" ' "].) " ' "The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." ' " (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811.)

" '[W]e apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute.' " (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1331.) But, where the formation or revocability of an arbitration agreement are not at issue—and the pertinent question is *who* may or must submit to arbitration pursuant to an otherwise valid arbitration agreement—federal law applies. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1712–1713 (*Metalclad*); see also *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH* (4th Cir. 2000) 206 F.3d 411, 416–417, fn. 4 (*Schwabedissen*) ["Because the determination of whether ... a nonsignatory, is bound by the [arbitration agreement] presents no state law question of contract formation or validity, we look to the 'federal substantive law of arbitrability' to resolve this question."].)

" 'Because arbitration is a matter of contract, generally " 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " ' [Citation.] 'However, both California and federal courts have recognized *limited* exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to

4

arbitrate, a dispute arising within the scope of that agreement.' " (*People v. Maplebear, Inc.* (2022) 81 Cal.App.5th 923, 931, italics added; see also *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 17 (*Jones*) ["with *limited* exceptions only parties to an arbitration agreement can enforce it or be required to arbitrate"].) " ' " 'As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary." ' " ' " (*Maplebear*, at pp. 931–932.)

The parties agree Shakespeare did not personally execute the CBAs containing the arbitration provisions NASSCO seeks to enforce. Further, they agree Shakespeare was not a unionized NASSCO employee represented by the labor unions that executed the CBAs. Thus, it is uncontested Shakespeare never consented to the arbitration provisions in the CBAs and no other entity purported to do so on his behalf or for his benefit.

Nonetheless, NASSCO argues Shakespeare must submit to arbitration based on an equitable estoppel theory. NASSCO argues Shakespeare is estopped from asserting that the CBAs cannot be enforced against him because he has accepted the benefits of the CBAs. In particular, NASSCO asserts he has benefitted from the CBAs because, as part of the current lawsuit, he has filed potentially lucrative putative class and representative claims on behalf of unionized employees who are subject to the CBAs. Alternatively, NASSCO argues he benefitted by working at a NASSCO worksite, a "largely unionized job site" governed by the CBAs. We reject NASSCO's estoppel argument.

As an initial matter, NASSCO forfeited its estoppel argument by failing to present it to the trial court for its consideration in the first instance. " '[I]t is fundamental that a reviewing court will ordinarily not consider claims

5

made for the first time on appeal which could have been but were not presented to the trial court.' " (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591; see, e.g., *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 9 [appellant forfeited claim that nonsignatory could not enforce arbitration agreement]; *Jones, supra*, 195 Cal.App.4th at p. 19, fn. 12 [appellants forfeited claim they were entitled to enforce arbitration agreement under agency theory by not presenting it to trial court].)

NASSCO urges us to exercise our discretion and excuse its failure to present its estoppel argument below. "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682.) This case is not the rare case in which it is appropriate for us to excuse forfeiture. NASSCO's claim—that Shakespeare is estopped from opposing enforcement of the arbitration provisions in the CBAs because he has benefitted from the CBAs—is not a pure legal issue, but rather an argument that requires consideration of factual issues including the extent to which Shakespeare has in fact benefitted from the CBAs. (See *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 ["The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence."].) Moreover, the appeal does not present an important legal issue warranting our exercise of discretion.

Forfeiture aside, NASSCO's estoppel argument is unconvincing on the merits. To support its estoppel argument, NASSCO invokes legal standards discussed in federal decisional law, primarily *Schwabedissen, supra*, 206 F.3d 411. In that case, a lower federal court determined a nonsignatory to an arbitration agreement may be estopped from refusing to comply with the

6

arbitration agreement when the nonsignatory has " 'receive[d] a "direct benefit" from [the] contract containing [the] arbitration clause.' " (*Id.* at p. 418; *ibid.* ["In the arbitration context, the [estoppel] doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."]; see also *Metalclad, supra*, 109 Cal.App.4th at p. 1713 ["a party who has *not* signed a contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him"].)

According to NASSCO, Shakespeare is benefitting from the CBAs—and is estopped from resisting enforcement of their arbitration provisions— because he is pursuing potentially profitable class and representative causes of action on behalf of employees whose terms of employment are governed by the CBAs. But, as Shakespeare correctly notes, his causes of action do not seek to secure benefits or effectuate rights guaranteed by the CBAs. Rather, they allege extra-contractual violations of state wage and hour laws. Thus, to the extent Shakespeare might obtain any benefit from his putative class and representative causes of action, it is state law that would supply the benefit— not the CBAs. (See *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1131 [nonsignatory could not be compelled into arbitration under estoppel theory, in part, because nonsignatory sued signatory for "noncontractual injury," not to recover benefits under contract with arbitration provisions]; see also *InterGen N.V. v. Grina* (1st Cir. 2003) 344 F.3d 134, 145–146 [nonsignatory could not be compelled to arbitration because it did not seek damages under contract containing arbitration provisions; rather, it sought recovery for signatory's "extra-contractual assurances"].)

7

In the alternative, NASSCO argues Shakespeare benefitted from the CBAs because he purportedly worked "at a job site where [the] CBAs set the terms of employment for almost everyone around him." Perhaps because NASSCO did not present its estoppel argument to the trial court in the first instance, there is nothing in the appellate record to support NASSCO's unfounded claims about where Shakespeare worked, with whom he worked, and the CBAs that might have governed those particular coworkers' terms of employment. For this reason alone, the argument fails. But even if the appellate record supported NASSCO's argument, we would reject it. " '[Case law] consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration.' " (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070–1071.) Here, the claimed benefit—working in proximity to employees who benefitted from the CBAs—is far too attenuated to compel a nonsignatory like Shakespeare into arbitration.

We offer a brief observation in closing. Throughout its appellate briefs, NASSCO vigorously claims Shakespeare should not "be allowed" to pursue causes of action on behalf of NASSCO employees generally, let alone those subject to CBAs, because he was never a NASSCO employee. This argument potentially might be relevant when the trial court decides whether class certification is warranted for Shakespeare's causes of action—at which point the court must decide, among other things, whether a well-defined community of interest exists. (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 968.) It may also be pertinent to whether Shakespeare is an "aggrieved employee" with standing to bring a PAGA cause of action on behalf of himself and "other current or former employees." (Lab. Code, § 2699, subd. (a).) But it is plainly irrelevant to the current proceeding, which concerns the

8

straightforward question of whether a signatory to an arbitration agreement (NASSCO) may require a nonsignatory to the agreement (Shakespeare) to submit his claims to arbitration. Under the facts presented here, the answer to that question is no.[2]

IV

DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondent is entitled to his appellate costs.

McCONNELL, P. J.

WE CONCUR:


IRION, J.


DO, J.

---

[2] Shakespeare filed a motion for monetary sanctions against NASSCO and/or its legal counsel arguing that the present appeal is frivolous. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649–651.) Although we side with Shakespeare on the merits, we conclude the appeal is not so totally and completely devoid of merit that it constitutes a frivolous appeal. Accordingly, we deny the sanctions motion.