[No. B230197. Second Dist., Div. Three. Apr. 16, 2012.]

EPITECH, INC., et al., Plaintiffs and Respondents. v.
GARRY MICHAEL KANN et al., Defendants and Appellants.

**COUNSEL**

Jacobson, Russell, Saltz & Fingerman and Mark E. Fingerman for Defendants and Appellants.

Law Offices of John A. Belcher, John A. Belcher; McColloch Law Firm and Michael T. McColloch for Plaintiffs and Respondents.

**OPINION**

**CROSKEY, J.**—As a corporation's short-term secured debt obligations were soon to come due, it retained a financial advisor to enable it to obtain long-term financing which would, in part, enable it to pay off its short-term creditors. The financing was never obtained, and the corporation ultimately fell into bankruptcy. The corporation's short-term creditors brought suit against the financial advisor, alleging that his fraudulent misrepresentations induced them to forbear from foreclosing on their security, to their ultimate financial detriment. The financial advisor filed a petition to compel arbitration, on the basis that the short-term creditors had been third party beneficiaries of the financial advisor's contract with the corporation, which contained an arbitration clause. The trial court denied the motion and the financial advisor appeals. As the short-term creditors were not third party beneficiaries of the contract between the financial advisor and the corporation, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

This appeal arises from three consolidated lawsuits arising out of the ultimate failure of AutoLife Acquisition Corporation (AutoLife). AutoLife

initially had two groups of shareholders: (1) Patrick Moore, Claudia Fullerton, William Grivas, Newtonhill, Ltd., and the Hill Family Trust (the majority shareholders), and (2) James Filicia, Richard McGorrian, and related individuals and entities (the minority shareholders). The majority shareholders had originally provided startup funding for AutoLife and owned 75 percent of its capital stock. The minority shareholders ultimately bought out the majority shareholders, for an immediate payment of cash and a note from AutoLife for $1.6 million, secured by a lien on all AutoLife assets and stock pledge agreements.

The funds necessary for the cash payment to the majority shareholders were allegedly acquired by the minority shareholders from Mitchell Family Investments, L.P. (the AutoLife investor). The AutoLife investor was solicited to invest $3.5 million in AutoLife, in exchange for warrants and a note for $3.5 million, secured by AutoLife's assets. The AutoLife investor alleges that while it had been induced to invest in AutoLife on the basis that AutoLife would use the AutoLife investor's funds to acquire certain businesses, the AutoLife minority shareholders instead had AutoLife use the funds to purchase the majority shareholders' stock, and then sold that stock to themselves for the total sum of $3. Thus, the AutoLife minority shareholders allegedly used the AutoLife investor's funds to acquire full ownership of AutoLife free and clear, leaving AutoLife holding debt in favor of both the majority shareholders and the AutoLife investor.

Simultaneously with these transactions, AutoLife purchased some assets from Epitech, Inc., one of its suppliers (the supplier), in exchange for cash and notes in the approximate amount of $375,000, secured by an interest in certain AutoLife assets.

All three transactions closed on or about December 30, 2005. When they were all completed, AutoLife had the following obligations:[1] (1) a $3.5 million note to the AutoLife investor, due on March 1, 2006, with a security interest in first position; (2) a $1.6 million note to the majority shareholders, due on March 1, 2006, with a security interest in the second position; and (3) a $375,000 note to the supplier, due on March 1, 2006, with a security interest in the third position. We refer to the AutoLife investor, the majority shareholders, and the supplier collectively as the secured creditors.

On February 2, 2006, AutoLife retained Kann Capital, Ltd., through its principal, Garry Michael Kann (collectively, Kann). According to the engagement letter, Kann was retained "to assist [AutoLife] in raising growth capital

---

[1] Plaintiffs allege somewhat different amounts are owed, perhaps due to the accrual of interest. Our purpose in setting forth the facts is to provide a broad general understanding of the background, not to resolve any factual disputes.

for [AutoLife] ('the Financing') and to act on AutoLife's behalf as financial advisor with respect to the Financing." Kann was to seek financing in the range of $9 million. It was agreed that Kann would "advise and assist AutoLife in devising and executing a program to secure the Financing," although it was agreed that "[t]here is no guarantee that [Kann] [would] be successful in securing the Financing for AutoLife." Pursuant to the engagement letter, Kann would be paid a $25,000 retainer, and a percentage of any financing obtained. Kann's duties under the engagement letter were identified as including: (1) "[s]electing and structuring of materials, documents, and applications in a manner which [Kann] determines to be necessary to obtain the Financing"; (2) "[i]dentifying on a best efforts basis, prospective capital investors and lending institutions that may have an interest in providing the Financing to AutoLife"; (3) "[n]egotiating the terms of the Financing with prospective capital investors and lending institutions"; and (4) "[s]tructuring of and participation in presentations to prospective investors and lending institutions as reasonably necessary to obtain the Financing."

The engagement letter was signed by Kann and AutoLife. It contained an arbitration clause for "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof."

Financing did not materialize by March 1, 2006, but the secured creditors did not then foreclose their security interests. According to the allegations of their complaints, the secured creditors were induced to forbear on foreclosure by continued representations of the minority shareholders and Kann that financing would soon be obtained. Indeed, the secured creditors allege a series of misrepresentations from Kann which *predate* Kann's engagement by AutoLife,[2] and continued to January 5, 2007, and possibly beyond. Kann's alleged representations specifically included representations that an investor called "Barbican" was a reliable investor and Kann expected Barbican's proposed investment in AutoLife to come to fruition. The Barbican loan never closed and, eventually, the secured creditors stopped waiting.

In April 2007, the majority shareholders foreclosed on the stock pledge agreements, thereby regaining control of AutoLife. At this point, they discovered a resignation letter from Kann, dated January 2, 2007. The letter apparently[3] indicated that Kann resigned because AutoLife continued to pursue financing with Barbican *against Kann's recommendation* and that Kann was " 'extremely uncomfortable . . . being the focal point for Auto[L]ife to communicate with Auto[L]ife's various creditors . . . .' "

---

[2] The secured creditors allege that Kann's representations that the financing was essentially presold were part of the inducement for them to *enter into* their transactions with AutoLife.

[3] The letter is not attached as an exhibit to any of the complaints.

Kann's letter purportedly stated, " '[I] do not believe the Barbican funding process is viable to complete, yet Auto[L]ife is asking [me] to continue to represent to creditors . . . that it is.' " The secured creditors allege that, on January 5, 2007—three days after Kann's resignation letter—Kann had again represented to them that the Barbican transaction was on track to close.

After discovering Kann's resignation letter, and learning of the dire financial condition of AutoLife (which had over $10 million in liabilities and only $6 million in assets), the majority shareholders placed AutoLife in bankruptcy in June 2007. The instant complaints eventually followed.

### 2. Allegations of the Complaints

In three separate actions, the majority shareholders, the AutoLife investor, and the supplier all brought suit against the minority shareholders and Kann. As against Kann, the secured creditors alleged only causes of action for fraud, negligent misrepresentation, and concealment.[4] They did not pursue Kann for breach of contract, or base any of their allegations on Kann's failure to obtain an investor. Instead, the secured creditors alleged that Kann's representations: (1) induced them to enter into their transactions with AutoLife and (2) induced them to forbear from foreclosing their security interests until such time as the minority shareholders had looted all of the value from AutoLife. The cases were consolidated.

### 3. Petition to Compel Arbitration

After substantial discovery had been taken in the consolidated actions, Kann filed a petition to compel arbitration, pursuant to the arbitration clause in his engagement letter with AutoLife. Kann argued that the secured creditors were third party beneficiaries of his agreement with AutoLife.[5] Kann relied on deposition excerpts from the secured creditors indicating that they stood to benefit from Kann obtaining the financing that he was seeking for AutoLife, as the financing would have paid off their notes. However, the representative of the majority shareholders added, "assuming that when you raise the capital, they chose to use it to pay off the note."

---

[4] The AutoLife investor also alleged causes of action for securities fraud under the Corporations Code, and conversion of Kann's $25,000 "secret . . . broker fee."

[5] Kann also argued that the secured creditors "had . . . a relationship with AutoLife that pre-existed the [engagement letter agreement] making it equitable that they should be bound by the ADR terms thereof." He no longer pursues this argument on appeal, relying solely on the third party beneficiary theory.

After the secured creditors opposed the petition,[6] Kann filed a reply. In his reply, Kann argued, "Plaintiffs are suing Kann because they say Kann got them to for[]bear from foreclosing on their positions with Auto[L]ife, because they say Kann falsely told Plaintiff that the funding to be obtained under the subject contract was imminent. It is axiomatic that if the funding had been obtained, Kann would not be a defendant in this action. *Plaintiffs are precisely suing Kann because of the way he performed under his contract with Auto[L]ife to obtain funding to pay off Plaintiffs*. Plaintiffs are therefore, under applicable law, classic third party 'creditor' beneficiaries to the services Kann was to perform under the contract . . . ."

The trial court disagreed and denied the petition to compel arbitration. Kann filed a timely notice of appeal.

## CONTENTIONS ON APPEAL

On appeal, Kann argues that he was entitled to arbitration as the secured creditors are third party creditor beneficiaries of his agreement with AutoLife, based on the allegations of their complaints and their admissions in discovery. In response, the secured creditors argue that they are not third party beneficiaries, and, in any event, Kann waived the right to arbitrate by delaying his petition until after he had obtained discovery. We need not reach the waiver issue, as it is apparent that, as a matter of law, the secured creditors were not third party creditor beneficiaries of Kann's agreement with AutoLife. We therefore affirm.

## DISCUSSION

■ Under Code of Civil Procedure section 1281.2, the court shall order the parties to arbitration "if it determines that an agreement to arbitrate the controversy exists . . . ." Under California law, there is a strong public policy in favor of arbitration. (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069 [70 Cal.Rptr.3d 605].) However, "[t]he public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate." (*Ibid.*) There are exceptions to the rule that a nonsignatory cannot be compelled to arbitrate a dispute. (*Ibid.*) One such exception occurs when the nonsignatory is a third party beneficiary of the contract containing the arbitration agreement. (*Ibid.*)

■ " 'Whether a third party is an intended beneficiary . . . to the contract involves construction of the parties' intent, gleaned from reading the contract

---

[6] In their opposition, in addition to arguing that they were never parties to an arbitration agreement, the secured creditors argued that Kann's delay in pursuing arbitration constituted a waiver.

as a whole in light of the circumstances under which it was entered.' " (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 349 [87 Cal.Rptr.2d 856].) " 'Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract,' which we review under the substantial evidence standard. [Citation.] If, however, as here, the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered, our review is de novo: '[W]here . . . the issue [of whether a third party is an intended beneficiary] can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently.' [Citation.]" (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891 [38 Cal.Rptr.3d 78].)

■ A third party can be considered a third party beneficiary as either a creditor beneficiary or a donee beneficiary. (*Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.* (2009) 178 Cal.App.4th 1194, 1199 [101 Cal.Rptr.3d 71].) We are here concerned only with creditor beneficiaries; there is no suggestion that the secured creditors were donee beneficiaries of Kann's agreement with AutoLife. " 'A creditor beneficiary is a party to whom a promisee owes a preexisting duty which the promisee intends to discharge by means of a promisor's performance.' [Citations.]" (*Id.* at p. 1200.) A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. (*Ibid.*) "A party need not show that it was intended to benefit as an individual [in order to be a third party beneficiary] and may [be a third party beneficiary if] it is a member of a class the parties intended to benefit. [Citation.] At the same time, it is not enough that the third party would incidentally have benefited from performance. [Citations.]" (*Souza v. Westlands Water Dist., supra,* 135 Cal.App.4th at p. 891.) "The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to [render that party a third party beneficiary]. The contracting parties must have intended to confer a benefit on the third party." (*Neverkovec v. Fredericks, supra,* 74 Cal.App.4th at p. 348.)

We turn to the contract at issue in this case: Kann's engagement letter with AutoLife. Kann argues that the secured creditors are third party creditor beneficiaries because his performance of the contract would benefit the secured creditors as, under the contract, Kann was to obtain funding which would have paid off AutoLife's obligations to the secured creditors. The argument is unavailing. Indisputably, AutoLife's pre-existing obligation to the secured creditors was to pay them the millions that they were owed. Clearly, Kann's performance under the contract would not have discharged this obligation. Kann did not contract to pay the secured creditors *any money at all*; therefore, Kann's performance of the contract would not have satisfied

AutoLife's preexisting obligation to the secured creditors. Moreover, under the terms of Kann's engagement letter, Kann did not agree to *obtain* the financing; the agreement was only for him to perform certain acts geared toward possibly obtaining financing (structure the materials, identify prospective investors, make presentations to prospective investors, and negotiate with prospective investors). None of the tasks Kann agreed to do satisfied *any* obligation that AutoLife owed to the secured creditors. AutoLife had no obligation to the secured creditors to, for example, identify prospective investors and pitch the investment to them. AutoLife's only obligation to the secured creditors was to repay them, which Kann simply did not contract to do.

While it is true that if Kann had successfully obtained financing, the secured creditors may well have been repaid, this simply would have been an incidental result of Kann's performance. Indeed, it might not have occurred; as one of the majority shareholders noted at his deposition, the financing sought would have brought $9 million *to AutoLife*. While it was presumed that AutoLife would have used the funds to repay the secured creditors, there was no guarantee that it would have done so. Thus, even if Kann had contracted to *obtain* financing for AutoLife, satisfaction of Kann's contractual obligations would not necessarily have satisfied AutoLife's debt to the secured creditors. Thus, they do not meet the definition of third party creditor beneficiaries.

Moreover, we note that the secured creditors are not suing Kann for breaching any of his contractual duties allegedly owed to them as third party beneficiaries. Instead, they are pursuing Kann in causes of action for fraud, negligent misrepresentation, and concealment.[7] Plaintiffs pursue Kann for alleged misrepresentations which occurred not only during the contract term, but before the engagement letter was executed and after Kann allegedly terminated his agreement with AutoLife. The misrepresentations alleged do not arise out of Kann's contractual relationship and are independent of it.

█ In short, AutoLife owed the secured creditors millions of dollars, and Kann's contract obligated him to make certain efforts toward obtaining long-term financing for AutoLife. Kann's satisfaction of his contractual obligations to AutoLife would not have satisfied AutoLife's obligations to the secured creditors, although it might have made it more likely that AutoLife would have been in a position to be able to satisfy them itself. Therefore, the secured creditors were not third party beneficiaries of Kann's agreement with AutoLife, and the trial court did not err in denying Kann's petition to compel arbitration.

---

[7] Kann makes no argument that the AutoLife investor's cause of action for "conversion" with respect to the $25,000 AutoLife paid Kann pursuant to the contract requires arbitration.

## DISPOSITION

The order is affirmed. The secured creditors shall recover their costs on appeal from Kann.

Klein, P. J., and Kitching, J., concurred.