Filed 10/2/13  Ruby v. Allen Matkins et al. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HOWARD F. RUBY, individually and as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP,<br><br>    Defendant and Appellant. | B243423<br><br>(Los Angeles County<br>Super. Ct. No. BC479860) |

APPEAL from an order of the Superior Court of Los Angeles County,

Mark V. Mooney, Judge.  Reversed with directions.

Jeffer, Mangels, Butler & Mitchell, Robert E. Mangels, Susan Allison and

Andrew I. Shadoff for Defendant and Appellant.

Kinsella Weitzman Iser Kump & Aldisert, Dale F. Kinsella and

Jonathan Steinsapir for Plaintiff and Respondent.

Allen Matkins Leck Gamble Mallory & Natsis LLP (Allen Matkins) appeals an order denying its motion to compel Howard F. Ruby to arbitrate a legal malpractice action. Ruby is not a party to the engagement letter agreement between Allen Matkins and its client R&B Realty Group, LP (R&B) containing an arbitration clause. We conclude, however, that Ruby as a nonparty is nonetheless bound by the arbitration agreement because he voluntarily accepted the benefits of Allen Matkins's representation under the engagement letter. We therefore will reverse the order with directions to grant the motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

1.     *Factual Background*

R&B manages apartment buildings and corporate housing under the fictitious business names Oakwood Worldwide and Oakwood. The Howard F. Ruby Trust (Ruby Trust) is a general partner in R&B, a limited partnership. Ruby is trustee of the Ruby Trust.

R&B does not own the buildings that it manages. Instead, at the time of the events in this case, many of the buildings were owned by separate partnerships (the Property Partnerships) owned by partners only some of whom were general partners in R&B.

Partners in the Property Partnerships sought a means to cash out of their investments without realizing taxable capital gains. They decided to accomplish this through an umbrella partnership real estate investment trust (UPREIT) and entered into

2

negotiations with the Archstone-Smith Trust (Archstone). R&B hired Allen Matkins as its legal counsel in connection with the UPREIT transactions.

Allen Matkins and R&B entered into an engagement letter agreement dated December 5, 2001, for the provision of legal services "in connection with partnership, tax and related matters for the Company [defined as Oakwood Worldwide] and its affiliates." The engagement letter included an arbitration clause stating, in relevant part, "in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed (including but not limited to disputes regarding attorneys' fees or costs and those alleging negligence, breach of fiduciary duty, fraud or any claim based upon a statute), such dispute shall be resolved by submission to binding arbitration . . . . " Darby T. Keen signed the engagement letter as president of Oakwood Worldwide.

The UPREIT transactions were completed, including certain tax-related agreements designed to indemnify the partners in the Property Partnerships against any tax liability. The partners contributed their real property interests to a separate entity in exchange for ownership interests known as units. The partners later allegedly were forced to sell those units in connection with a "reverse merger" transaction and incurred capital gains tax liabilities as a result. Archstone refused to indemnify the partners for their tax liabilities.

Ruby and others filed a complaint against several entities for damages relating to their tax liabilities. The defendants successfully moved to compel arbitration based on arbitration provisions in the tax-related agreements. The arbitration panel concluded

that the tax-related agreements provided no tax protection to the partners in the event of a reverse merger and that the partners were entitled to no indemnity.

2.   *Trial Court Proceedings*

Ruby, individually and as trustee of the Ruby Trust, filed a complaint against Allen Matkins in February 2012 and filed a first amended complaint in April 2012.[1] He alleges that Allen Matkins represented him as a partner in the Property Partnerships in connection with the UPREIT transactions. He alleges counts against Allen Matkins for professional negligence and breach of fiduciary duty arising from such representation.

Ruby alleges that he sought complete tax protection in the UPREIT transactions, including an indemnity in the event that he realized any capital gains as a result of any action by Archstone. He alleges that Allen Matkins assured him that it had secured complete tax protection for him in the transactions. He alleges, however, that Allen Matkins failed to secure complete tax protection for him because it failed to include a "merger protection" provision in the tax-related agreements.

Allen Matkins filed a motion to compel arbitration and stay the action pending the completion of the arbitration. It argued that Ruby, individually and as trustee of the Ruby Trust, was bound by the arbitration agreement in the engagement letter because (1) he alleges that Allen Matkins acted as his attorney and (2) the firm performed all of its services in connection with the UPREIT transactions pursuant to the engagement

---

[1]   A trust is not a legal entity and has no capacity to sue or be sued. (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 2:6, p. 2-3.) The proper party with respect to the trust is Ruby as trustee. (See Code Civ. Proc., § 369, subd. (a)(2).)

4

letter.  Allen Matkins also argued that that the Ruby Trust as a general partner in R&B was an agent of R&B and a beneficiary of the engagement letter and therefore was bound by the arbitration agreement, and that Ruby individually was an agent and beneficiary of the Ruby Trust and therefore was similarly bound by the arbitration agreement.

Ruby argued in opposition that he was not bound by the arbitration agreement in the engagement letter because (1) he was not a party to the arbitration agreement and (2) the claims alleged in his complaint did not arise from Allen Matkins's representation of R&B or its representation of Ruby as a general partner in R&B.

Allen Matkins argued in reply that Ruby was bound by the arbitration agreement because all of the work it performed allegedly as Ruby's legal counsel it performed pursuant to the engagement letter.  It argued that Ruby had not shown that it represented Ruby separate and apart from its representation of R&B.  Allen Matkins also argued that Ruby was bound by the arbitration agreement because he voluntarily accepted the benefit of the legal services provided by Allen Matkins pursuant to the engagement letter and because his claims were inextricably intertwined with those legal services.

Allen Matkins filed a declaration by Keen in support of its reply stating that he understood the reference to "affiliates" in the engagement letter to include the general partners of the Property Partnerships, and that all of the work performed by Allen Matkins as alleged in the complaint was performed pursuant to the engagement letter. Ruby objected to the Keen declaration as untimely and on other grounds.

5

The trial court stated at the hearing on the motion to compel arbitration that it was "not quite clear that these dots have been all connected to Mr. Ruby and his position as a general partner with these property partnerships and this engagement letter that was signed. I think that a compelling argument can be made that the advice and the actions given regarding, regarding these property partnerships is somewhat different than what was involved in the R&B Realty Group representation." The court therefore denied the motion in a minute order filed on August 7, 2012, and overruled Ruby's evidentiary objections. Allen Matkins timely appealed the order.

## *CONTENTIONS*

Allen Matkins contends (1) Ruby is bound by the arbitration agreement because the scope of legal services under the engagement letter expressly encompasses matters involving R&B's affiliates, and Ruby failed to show that Allen Matkins represented him separately from its representation of R&B under the engagement letter; (2) Ruby is bound by the arbitration agreement as a nonsignatory because he voluntarily accepted the benefits of the legal services provided under the engagement letter; and (3) Ruby is bound as a nonsignatory because he had a "preexisting relationship" with R&B and because his claims are "inextricably intertwined" with the legal services provided under the engagement letter.

## *DISCUSSION*

Parties to an arbitration agreement can be compelled to arbitrate disputes that are within the scope of the arbitration agreement. Code of Civil Procedure section 1281.2 states that on a petition filed by a party to a written arbitration agreement, a court must

6

order a party to the agreement to arbitrate a controversy if it finds that an agreement to arbitrate the controversy exists, unless a specified exception applies.  The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) "reflects a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citation.]"  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380.)

As a general rule, a person can be compelled to arbitrate a dispute only if he or she has agreed to resolve such a dispute by arbitration.  (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.)  The strong public policy in favor of arbitration does not support the compelled arbitration of a dispute that a party has not agreed to arbitrate. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)  Whether a nonsignatory is bound by an arbitration agreement is a question of law that we review de novo if the material facts are undisputed.  (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512.)

Courts have recognized certain exceptions to the general rule that only a signatory to an arbitration agreement can be compelled to arbitrate.  For example, a nonsignatory to an arbitration agreement is bound by the agreement and can be compelled to arbitrate if an agent entered into the agreement on his or her behalf. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-709 [held that a state employee was bound by an arbitration agreement in a group medical plan entered into by a state employees' retirement board as agent for the employees]; *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 264-267 [held that the plaintiffs in

7

a wrongful death action were bound by arbitration agreements with a residential care facility entered into by the decedent's attorney in fact under a durable power of attorney].)

An arbitration agreement also may be binding on a nonsignatory in other circumstances where the nature of the nonsignatory's relationship with a party to the agreement supports the implied authority of the party to bind the nonsignatory (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070 (*Crowley*) [discussing cases where a preexisting relationship "gives the party to the agreement authority to bind the nonsignatory"]; *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 600 [stating that an arbitration agreement is binding on a nonsignatory if a preexisting relationship "supports the implied authority of the party to bind the nonsignatory"]) or where the nonsignatory receives the benefit of the contract containing the arbitration agreement (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81-84 [held that after seeking and receiving the benefit of an insurance policy, the insured's wife was bound by the policy's arbitration clause]; *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 478-479 (*Harris*) [held that a doctor was bound by an arbitration agreement between a medical group and a patient, both as an employee of the medical group and as a third party beneficiary of the arbitration agreement]; see *Epitech, Inc. v. Kann* (2012) 204 Cal.App.4th 1365, 1371-1373 [held that secured creditors were not third party beneficiaries of the debtor's agreement with a financial advisor to obtain financing]).

Civil Code section 1589 states, "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Thus, a nonparty to an arbitration agreement who knowingly and voluntarily accepts the benefits of the contract containing the arbitration agreement is bound by the arbitration agreement and can be compelled to arbitrate. (*Harris*, *supra*, 188 Cal.App.3d at p. 479 [stating that a doctor's acceptance of the benefits of a health plan agreement, to which he was not a party, by obtaining patients "necessarily entailed acceptance of the agreement that members' claims would be subject to binding arbitration"] ; cf. *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1520 [holding that an employee who accepted the benefits of her employer's agreement with another company was "bound by the arbitration agreement both as an agent-employee . . . and as a third party beneficiary" of the agreement and therefore was not a stranger to the arbitration agreement for purposes of Code Civ. Proc., § 1281.2, subd. (c)].)

Allen Matkins as counsel for R&B negotiated the UPREIT transactions with Archstone. Those transactions were designed to allow partners in the Property Partnerships, including Ruby, to cash out of their real property investments without realizing taxable capital gains. Thus, Allen Matkins's representation of R&B directly benefited the partners in the Property Partnerships. This is true regardless of whether Allen Matkins also separately represented Ruby in connection with the UPREIT transactions. Ruby as a general partner in R&B was aware of this and voluntarily accepted the benefits conferred on him. We conclude that having accepted the benefits

9

of the representation provided pursuant to the engagement letter agreement, Ruby, individually and as trustee of the Ruby Trust, is bound by the arbitration agreement contained in the engagement letter. We therefore conclude that the denial of the motion to compel arbitration was error and that the motion must be granted. In light of our conclusion, we need not address Allen Matkins's other arguments for compelling arbitration.

## *DISPOSITION*

The order denying the petition to compel arbitration is reversed with directions to grant the motion.  Allen Matkins is entitled to recover its costs on appeal.


## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


CROSKEY, J.

WE CONCUR:



KLEIN, P. J.



KITCHING, J.

11