Filed 3/27/24  County of Los Angeles v. Baass CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B323406 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. 20STCV28846) |
| v. | |
| MICHELLE BAASS, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Clement Brazile, Judge.  Reversed and remanded with instructions.

Law + Brandmeyer, Yuk K. Law, Zachary Schwake; Pollak, Vida & Barer, Daniel P. Barer and Anna L. Birenbaum for Cross-complainant and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Jacquelyn Y. Young, Deputy Attorneys General, for Cross-defendant and Respondent.

This is an appeal from a judgment of dismissal entered after the trial court sustained a demurrer to appellant County of Los Angeles's (the County's) cross-complaint against respondent Michelle Baass, Director of the Department of Health Care Services,[1] without leave to amend.

The County and Rufino Lugo settled a medical malpractice action that Lugo had brought against the County.[2] The settlement agreement obligates the County to assume any Medi-Cal lien for which Lugo is legally responsible. The trial court in the personal injury action[3] granted Lugo's petition to approve the settlement agreement. The Department, which administers the Medi-Cal program, claims that neither the County nor Lugo informed the Department of the settlement or of Lugo's petition to approve it.

In a letter sent to Lugo after the parties settled the personal injury action, the Department asserted a Medi-Cal lien against Lugo's settlement in the amount of $380,920.77. The County informed the Department of the County's position that after accounting for certain statutorily-mandated reductions, the County owed only $109,337.19 on the lien. The County remitted that sum to the Department.

The Department then sued Lugo, apparently without the Department or Lugo giving notice to the County, for the balance the Department claimed was due on the lien ($271,583.58). After

_____

[1] We refer to respondent as "the Department."

[2] Lugo is not a party to this appeal.

[3] The judge who issued the judgment at issue on appeal was not the same judge who presided over the underlying personal injury case.

Lugo paid that sum to the Department, Lugo brought the instant action against the County to recoup that payment to the Department; the County claims it ultimately reimbursed Lugo for his payment to the Department.  During the pendency of the lawsuit, the County also cross-complained against the Department for, inter alia, unjust enrichment.  This appeal arises from the trial court's order sustaining the Department's demurrer to that cross-complaint without leave to amend.

The County asserts that under the statutory scheme governing Medi-Cal liens, it is not liable for the entire amount of the lien.  Rather, the County argues it is liable for only that portion of the settlement attributable to the Department's payment of past medical expenses, as further reduced by the Department's statutory share of Lugo's attorney fees and costs.  The Department retorts that the County has no standing to seek a reduction in the lien because only the Department or Lugo would have standing to do so, and then only by the motion authorized by Medi-Cal's statutory scheme.  The Department also argues the language of the settlement agreement and the order approving that agreement expressly required the County to pay the entire amount of the lien.

On appeal, we hold that a motion for reduction of the lien under Medi-Cal's statutory scheme is not the exclusive means for seeking reduction of the lien.  The Department has not rebutted the "strong" presumption against legislative intent to displace common law remedies,[4] and the County thus had standing to bring its cross-complaint based on unjust enrichment.  We also

---

[4]  (See *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 249 (*McMillin Albany LLC*).)

3

reject the Department's interpretation of the settlement agreement and the order approving the agreement, respectively, and hold that neither of them precludes the County from seeking a reduction in the Department's recovery on the lien. We thus reverse the judgment of dismissal and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[5]

We summarize only those facts pertinent to this appeal.

Lugo is an incapacitated person. The Department asserts, "After a series of negligent acts by the County's health care providers, Lugo suffered cardiorespiratory arrest and sustained a profound, irreversible brain injury, leaving him entirely dependent on others for the remainder of his life." The Department further alleges, "As a result of this injury, the Department paid $552,059.08 on behalf of Lugo for health care services he received."

---

[5] We derive our Factual and Procedural Background in part from admissions the parties make in their briefing, undisputed aspects of the trial court's rulings, and assertions made by the Department that the County does not contest in its briefing. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 773–774 [concluding that appellants "tacitly concede[d]" a point raised by respondents by failing to dispute it].)

In June 2015, Lugo sued the County for medical malpractice. In March 2017, the parties to the personal injury action participated in a mediation. Following the mediation, Lugo and the County agreed to settle the action for $3.5 million. Paragraph 10 of the parties' settlement agreement provides: "Defendant County of Los Angeles will assume and hold harmless Plaintiffs for any Medi-Cal lien for services rendered and related to the injuries claimed in this action provided prior to the time this settlement is finalized, for which Plaintiff are [*sic*] legally responsible."

In May 2017, the trial court in the underlying personal injury action granted Lugo's petition to approve the settlement agreement. According to the Department, the order approving the settlement agreement contains language that obligates the County to "pay the entire amount of the [Department's] Medi-Cal lien for Lugo's care . . . ."[6] The Department further claims that "[t]he County and Lugo did not notify the Department of their mediation, their settlement agreement, or the petition for compromise," and that "[t]he County and Lugo . . . did not give the Department notice of the hearing . . . on the petition for compromise."

In June 2017, the County Board of Supervisors approved the settlement.

In August 2017, the Department sent a letter to Lugo, indicating that after accounting for the Department's statutory share of attorney fees and litigation costs, Lugo owed $380,920.77

---

[6] We recite the pertinent text from the order approving the settlement in our Discussion, part B.2, *post*.

5

on a Medi-Cal lien for health care services stemming from the County's tortious conduct.

In September 2017, the County informed the Department via letter of the County's position that pursuant to Medi-Cal's statutory scheme, the Department's lien should be reduced to $109,337.19. The County sent a check for $109,337.19 to the Department. The County claims the Department deposited this check.

According to the County, without giving notice to the County or naming the County as a party, in March 2020, the Department sued Lugo to recover $271,583.58, which is the amount the Department claims was the balance owed on the Medi-Cal lien after deducting the County's $109,337.19 payment.[7] Lugo paid that amount to the Department.

In July 2020, Lugo filed a complaint against the County for breach of contract, account stated, and restitution. The trial court later granted Lugo's summary adjudication motion on his first cause of action for breach of contract on the ground that "the express terms of the settlement agreement and court order [approving it] . . . require that the County reimburse Lugo for all costs associated with the Medi-Cal lien." The County later filed an acknowledgment of satisfaction of that judgment.

Prior to the entry of judgment in Lugo's favor, the County filed a cross-complaint against the Department for unjust enrichment, equitable indemnity, and declaratory relief. The trial court sustained the Department's demurrer without leave to amend, reasoning that "[n]othing ha[d] been cited to indicate

---

[7] The County appears to claim that it had no notice of this suit until after Lugo sued the County for, inter alia, breach of the settlement agreement.

that . . . the County could unilaterally determine the amount of the lien" or that the amount of the lien could be determined in the instant proceedings instead of during the underlying personal injury action.

On August 26, 2022, the trial court entered a judgment of dismissal in accordance with its order sustaining the Department's demurrer without leave to amend. The County timely appealed this judgment.

## APPLICABLE LAW REGARDING MEDI-CAL LIENS AND STANDARDS OF REVIEW

### A. The Law Governing Medi-Cal Liens

"Medicaid is a medical assistance program for low-income individuals that is jointly funded by the federal and state governments. . . . . [¶] California has elected to participate in Medicaid by establishing the Medi-Cal program. California's implementing legislation, known as the Medi-Cal Act, is codified at [Welfare and Institutions Code[8]] section 14000 et seq. [Citation.] [The Department] is the state agency charged with administering the Medi-Cal program." (*Daniel C. v. White Memorial Medical Center* (2022) 83 Cal.App.5th 789, 795–796 & fn. 3, 800 (*Daniel C.*).)

"The Medi-Cal Act states that when benefits are provided to a Medi-Cal beneficiary because of an injury for which a third party or carrier is liable, [the Department] has the right to recover from such party or carrier the reasonable value of the Medi-Cal benefits. [Citation.] [The Department] may obtain

---

[8] Undesignated statutory citations are to the Welfare and Institutions Code.

7

reimbursement by filing an action directly against a third party tortfeasor, by intervening in a Medi-Cal beneficiary's action against a third party, or by filing a lien against a beneficiary's settlement, judgment, or award." (*Daniel C.*, *supra*, 83 Cal.App.5th at p. 800.) If the beneficiary settles an action with the third party tortfeasor, then the Department is permitted "to recover its lien from only that portion of the settlement reasonably allocated to past medical expenses . . . ." (See *id.* at pp. 795, 811, 814; see also § 14124.76, subd. (a) ["Recovery of the [Department's] lien from an injured beneficiary's action or claim is limited to that portion of a settlement . . . that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary."].)

If the "action [against the tortfeasor was] pursued by [the] beneficiary alone" (i.e., the Department was not a plaintiff), then the Department's recovery is further "reduced by [its] statutory share of attorney fees and costs," (see *Daniel C.*, *supra*, 83 Cal.App.5th at pp. 795, 800, 814), to wit, a 25 percent reduction to account for the Department's "reasonable share of attorney's fees paid by the [Medi-Cal] beneficiary," and by the Department's share of the litigation costs that is calculated pursuant to a statutory formula (see § 14124.72, subd. (d), cited in *Daniel C.*, at p. 812).

"[A]s a predicate to deciding how much of a Medi-Cal beneficiary's tort settlement [the Department] may claim [pursuant to its lien], the trial court must determine which portion of the settlement is attributable to past medical expenses, against which [the Department] is entitled to collect its lien, and other damages, against which it is not." (See *Daniel C.*, *supra*, 83 Cal.App.5th at p. 811.) In making this allocation, the trial

8

court may, but is not required to, utilize the formula from *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 (*Ahlborn*).  (See *Daniel C.*, at pp. 804, 807, 811.)  "[T]he *Ahlborn* formula 'is the ratio of the settlement to the total claim, when applied to the benefits provided by the Department.  [Citation.]  Expressed mathematically, the *Ahlborn* formula calculates the reimbursement due as the total settlement divided by the full value of the claim, which is then multiplied by the value of benefits provided.  (Reimbursement Due = [Total Settlement ÷ Full Value of Claim] × Value of Benefits Provided.)' [Citation.]"  (*Daniel C.*, at p. 809, fn. 8.)  In lieu of the *Ahlborn* formula, a trial court may "distinguish medical expenses in the settlement from other damages 'on the basis of a rational approach.' [Citations.]"  (See *Daniel C.*, at p. 811.)

## B.  Standards of Review

" 'A general demurrer searches the [pleading] for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts.' [Citation.]" (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1035; see also Code Civ. Proc., § 430.10, subd. (e) [providing that a demurrer for failure to state facts sufficient to constitute a cause of action may be leveled against a complaint or a cross-complaint].) "We independently review the ruling on a demurrer . . . ." (*Santa Ana Police Officers Assn. v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 323.)  "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse.' [Citations.]"  (See *Sanowicz*, at p. 1035.)

## DISCUSSION

In its order sustaining the Department's demurrer, the trial court stated, "[N]othing has been cited to indicate that [the amount of the Department's lien] can now be determined in this Court." The court appended to this remark a citation to section 14124.76, subdivision (b), thereby suggesting that this provision establishes that the court could not determine the proper amount of the Department's lien.[9] Similarly, the Department maintains on appeal that the County lacks standing to seek a reduction of the lien because subdivision (a) of section 14124.76 authorizes only the Medi-Cal beneficiary or the Department to file a motion seeking such relief.

Neither statutory provision precludes the County from asking the trial court to reduce the Department's lien. (Discussion, part A, *post*.) We also reject the Department's assertion that the settlement agreement and the order approving that agreement bar the County from seeking a reduction of the lien. (Discussion, part B, *post*.) Thus, the trial court erred in sustaining the Department's demurrer to the County's cross-complaint.

In reversing the judgment, we acknowledge the Department advanced other arguments below in support of its demurrer: "(1) the County failed to comply with the Government Claims Act; . . . [(2)] the equitable indemnity claim fails because

---

[9] The trial court also stated, "Nothing has been cited to indicate that contrary to . . . § 14124.76(a), the County could unilaterally determine the amount of the lien." We need not reach that question, given that the County maintains it should be afforded "the opportunity to litigate" the "statutorily-required reductions to the lien . . . ."

10

the County and the Department are not jointly and severally liable for an obligation; and [(3)] the declaratory relief claim relates to a past controversy encompassed by the County's other claims." Yet, the Department does not challenge on appeal the trial court's ruling that the Department's Government Claims Act defense presents "factual dispute[s]" that cannot be resolved on demurrer. The Department also does not reassert on appeal its other challenges to the County's equitable indemnity and declaratory relief causes of action (i.e., items (2) and (3) in the quotation at the beginning of this paragraph). Consequently, we do not reach these issues. (See *In re D.N.* (2020) 56 Cal.App.5th 741, 767 (*D.N.*) [" ' "Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment. '[I]t is as much the duty of the respondent to assist the [appellate] court upon the appeal as it is to properly present a case in the first instance, in the court below.' " ' "].)

## A. The Trial Court Erred In Concluding That It Could Not Reduce the Department's Lien, and We Reject the Department's Argument That the County Lacks Standing to Seek Such a Reduction

As we noted at the outset of our Discussion, the Department argues section 14124.76, subdivision (a) establishes that the County lacks standing to litigate the amount of the Medi-Cal lien, and the trial court seems to have concluded that subdivision (b) likewise prevents the County from doing so.

Given its importance to the resolution of this appeal, we quote fulsomely from the Medi-Cal Act. Section 14124.76, subdivision (a) provides: "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for

11

injuries where the [Department] has an interest, shall be deemed final or satisfied without first giving the [Department] notice and a reasonable opportunity to perfect and to satisfy the [Department's] lien. Recovery of the [Department's] lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. All reasonable efforts shall be made to obtain the [Department's] advance agreement to a determination as to what portion of a settlement, judgment, or award . . . represents payment for medical expenses, or medical care, provided of behalf on the beneficiary [*sic*]. Absent the [Department's] advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision. Either the [Department] or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures. In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the [Department] should be, the court shall be guided by the United States Supreme Court decision in Arkansas Department of Health and Human Services v. Ahlborn (2006) 547 U.S. 268 and other relevant statutory and case law." (See § 14124.76, subd. (a).)

Subdivision (b) in turn provides: "If the beneficiary has filed a third-party action or claim, the court where the action or claim was filed shall have jurisdiction over a dispute between the [Department] and the beneficiary regarding the amount of a lien

asserted pursuant to this section that is based upon an allocation of damages contained in a settlement or compromise of the third-party action or claim.  If no third-party action or claim has been filed, any superior court in California where venue would have been proper had a claim or action been filed shall have jurisdiction over the motion.  The motion may be filed as a special motion and treated as an ordinary law and motion proceeding and subject to regular motion fees.  The reimbursement determination motion shall be treated as a special proceeding of a civil nature pursuant to Part 3 (commencing with Section 1063) of the Code of Civil Procedure.  When no action is pending, the person making the motion shall be required to pay a first appearance fee.  When an action is pending, the person making the motion shall pay a regular law and motion fee.  Notwithstanding Section 1064 of the Code of Civil Procedure, either the beneficiary or the [Department] may appeal the final findings, decision, or order."  (See Welf. & Inst. Code, § 14124.76, subd. (b).)

To recap, subdivision (a) states that the Department's reimbursement must bear some relation to the past medical services the Department paid and further provides that absent the Department's advance agreement, determining the amount of reimbursement "shall" be decided by the court.  As to procedures for implementing this reduction, subdivisions (a) and (b) of section 14124.76 provide that the Department or the Medi-Cal beneficiary "*may* seek resolution" by motion of the amount of the Department's recovery on the lien in the court where "the beneficiary has filed a third-party action or claim" or in a court with proper venue "[i]f no third-party action or claim has been filed . . . ."  (See § 14124.76, subds. (a)–(b), italics added.)  The

13

Department, and the trial court in its order sustaining the demurrer, interpret this language as establishing that the only means of determining the appropriate reduction of the lien is by a motion brought by the Department or the beneficiary, and not by an action filed by the alleged tortfeasor. We disagree.

In its cross-complaint, the County has sought reduction of the Medi-Cal lien via the doctrine of unjust enrichment.[10] "Generally, one who is unjustly enriched at the expense of another is required to make restitution. [Citations.] The elements of . . . unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.' [Citations.]" (*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238.) Under this doctrine, "the obligation [to make restitution] arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.' [Citation.]" (See *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 998.)

As further explained in our Discussion, part B.1, *post*, the County assumed the Medi-Cal lien only insofar as Lugo was liable thereon, and Lugo in turn owed the Department only that

---

[10] In its opening brief, the County argues, "The County should have been permitted to amend its cross-complaint to add a cause of action pursuant to . . . section 14124.76, subd[ivision] (a) . . . ." Because we conclude the trial court erred in sustaining the Department's demurrer to the County's cross-complaint, we do not address whether the court erred in denying the County leave to plead a cause of action under the statute. (See Code Civ. Proc., § 472a, subds. (b)–(c) [indicating that if the demurrer is overruled, the trial court need not decide whether to grant leave to amend].)

14

portion of the settlement reasonably allocated to past medical expenses, as further reduced by the Department's share of attorney fees and costs.  Therefore, the Department's retention of the *full* amount of its Medi-Cal lien, reduced only by the amount the Department claims to be its share of attorney fees and costs (see Factual & Procedural Background, *ante*), does not comport with section 14124.76 subdivision (a)'s requirement that reimbursement to the Department be made from only the "portion of the settlement [that] is attributable to past medical expenses" paid by the Department.  (See *Daniel C.*, *supra*, 83 Cal.App.5th at pp. 806–807 & fn. 6, 811, citing, inter alia, § 14124.76, subd. (a).)

"[U]njust enrichment is a common law obligation implied by law based on the equities of a particular case . . . ." (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 346.)  In determining whether section 14124.76's motion procedures bar the County from obtaining a reduction of the lien under an unjust enrichment theory, "we begin with a presumption that the Legislature did not . . . intend" the "statutory scheme [to] alter[ ] or displace[ ] the common law . . . ." (See *McMillin Albany LLC*, *supra*, 4 Cal.5th at p. 249.)  "[T]he presumption against displacement of the common law is strong," meaning that "we conclude that settled common law principles must yield" "[o]nly ' "where there is no rational basis for harmonizing" ' a statute with the common law . . . ." (See *ibid*.)  Put differently, unless the Legislature has abrogated the common law " ' " 'by express declaration or by necessary implication[,]' " ' " "we construe statutory enactments as consonant with existing common law and reconcile the two bodies of law." (See *ibid*.)

15

Neither the trial court nor the Department has identified any legislative history or other support for the proposition that by authorizing the Medi-Cal beneficiary and the Department to file a motion to determine "the appropriate reimbursement amount" (see § 14124.76, subds. (a)–(b)), the Legislature intended to foreclose a third-party tortfeasor from seeking reduction of the Department's lien under the doctrine of unjust enrichment when the Department has been paid more than its statutorily-mandated share. Accordingly, the trial court erred in concluding that it could not reduce the Department's lien, and we reject the Department's assertion that the County lacks standing to seek that relief.

**B.     The Settlement Agreement and the Order Approving the Settlement Do Not Preclude the County From Seeking a Reduction of the Department's Lien**

The Department's principal argument in support of the trial court's sustaining the Department's demurrer to the cross-complaint is that "the County knowingly and willingly entered into a binding settlement agreement under which the County agreed to pay the Department's lien in full, and . . . this settlement agreement resulted in [a] Court Order expressly requiring the County to pay the Department's 'entire Medi-Cal lien.' " The Department further claims "the trial court lacks jurisdiction to invalidate the Court Order" approving the settlement because "[a]ny challenge to the Court Order had to be raised either in the original personal injury suit or in an appeal therefrom." As explained below, we reject the Department's assertion that the settlement agreement and the court order approving it bar the County from seeking a reduction of the Medi-Cal lien.

16

*1.    The settlement agreement obligates the County to pay the Department only the amount of the Medi-Cal lien for which Lugo was legally responsible*

The Department invokes paragraph 10 of the settlement agreement to support its argument that the County cannot request a reduction of the lien.  To reiterate, paragraph 10 states: "Defendant County of Los Angeles will assume and hold harmless Plaintiffs for any Medi-Cal lien for services rendered and related to the injuries claimed in this action provided prior to the time this settlement is finalized, for which Plaintiff are [*sic*] legally responsible."

The text of paragraph 10 requires the County to pay any Medi-Cal lien for which Lugo was legally responsible.[11]  Under these circumstances, the Department is a type of third-party beneficiary to the settlement agreement, specifically, " ' "[a] creditor beneficiary . . . to whom a promisee [(Lugo)] owes a preexisting duty [(reimbursement of the reasonable value of Medi-Cal benefits)] which the promisee intends to discharge by means of a promisor's [(the County's)] performance."  [Citations.]' [Citation.]"[12]

---

[11] Although the Department asserts that "Lugo and his wife" were plaintiffs in the underlying personal injury action, the Department does not claim that Lugo's wife was legally responsible for the Medi-Cal lien at issue.

[12] (See *Epitech, Inc. v. Kann* (2012) 204 Cal.App.4th 1365, 1372; see also *McMillian v. Stroud* (2008) 166 Cal.App.4th 692, 695, 698 [" '[The Department's] right [vis-à-vis the lien] is akin to that of [the Medi-Cal beneficiary's] creditor to recover payment for a debt [the Medi-Cal beneficiary] incurred when, having

17

The Department's status as a creditor beneficiary is significant because "[a]lthough the creditor beneficiary may enforce the original obligation against either the promisor or the promisee or against both, *he may not collect more than his due*; satisfaction in whole or in part of either of these duties will operate to that extent as satisfaction of the liability of the other." (See *Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 371, italics added.)  Put differently, paragraph 10 imposed upon the County the obligation to pay the Department precisely the same amount that Lugo owed on the Medi-Cal lien.  Under the Medi-Cal Act, Lugo owed the Department "only that portion of the settlement reasonably allocated to past medical expenses, as reduced by [the Department's] statutory share of attorney fees and costs."  (See *Daniel C.*, *supra*, 83 Cal.App.5th at p. 814.)  We thus reject the Department's contention that in the settlement agreement, "the County agreed to pay the Department's lien *in full . . . .*"  (Italics added.)

> 2.    *The order approving the settlement agreement does not prevent the County from litigating the amount of the Department's lien*

Although paragraph 10 of the settlement agreement merely requires the County to discharge Lugo's statutory obligation on the Medi-Cal lien, the Department maintains that the order approving the settlement agreement prevents the County from seeking reduction of the lien.  The order in question granted the petition of Lugo's guardian ad litem (his wife) for approval of the

received injuries for which the tortfeasor might be liable, he accepted treatment for which Medi-Cal paid.' "].)

18

settlement. The Department directs us to the following excerpt of the order: "As part of the terms of the settlement Defendant, County of Los Angeles is required to absorb and pay the entire Medi-Cal lien as of the date that the County Board approves the settlement. The County of Los Angeles will pay whatever the Lien amount is that accrues from now until the date of Board approval. Currently as of February 6, 2017 the lien is $341,036.10."**13**

In the abstract, portions of this text could be read to support the Department's contention that the order bars the County from seeking a reduction in the lien. Yet, " '[t]he true measure of an order . . . is not an isolated phrase appearing therein . . . . [Citations.] . . . [T]he same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. . . .' [Citation.]" (See *Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77 (*Concerned Citizens Coalition of Stockton*).) One such rule of interpretation is that ' " ' "[l]anguage . . . must be construed in the context of th[e writing] as a whole, and *in the circumstances of th[e] case . . . .*' " [Citations.] . . . While "reliance on [the] common understanding of language is bedrock[,] [¶] [e]qually important are the

_____

**13** Attachment 12 to the trial court's order approving the settlement clarifies that the County had to satisfy the Medi-Cal lien with funds separate from the $3.5 million paid by the County to settle the personal injury action.

requirements of *reasonableness* and *context*." [Citation.]'
[Citation.]"[14]

The personal injury court approved a settlement agreement
that obligated the County to assume the Medi-Cal lien only
insofar as Lugo would be burdened by that lien. (See Discussion,
part B.1, *ante*.) Given that context, the order's language
requiring the County to "absorb and pay the entire Medi-Cal lien"
could reasonably be interpreted as a mere restatement of the
County's agreed-upon obligation completely to absolve Lugo of his
liability to the Department by using funds to satisfy the lien
separate from those paid directly to Lugo under the settlement.
Indeed, the order indicates that the trial court imposed this
obligation on the County "[a]s part of the terms of the
settlement," thereby suggesting the court did not intend to create
any obligations that were not already prescribed in the
settlement agreement.

In keeping with this reading of the order, the text could be
read as requiring the County to "pay whatever the Lien amount
is that accrues from now until the date of Board approval" as
specifying the temporal limit of the financial commitment
assumed by the County, that is, the County was required to pay
the amount *Lugo owed* the Department as of the date the County

---

[14] (See *Mount Vernon Fire Ins. Co. v. Busby* (2013)
219 Cal.App.4th 876, 882, first italics added [discussing this rule
of contract interpretation]; see also *Poppers v. Tamalpais Union
High School Dist.* (1986) 184 Cal.App.3d 399, 404 ["Statutory
language *must be read in context*, keeping in mind the nature and
purpose of the enactment, and must be given such interpretation
as will promote rather than defeat the intent of the law," italics
added].)

Board approved the settlement. Additionally, the order's specification of a dollar figure associated with the Medi-Cal lien ($341,036.10) could have been intended merely to set the floor as to the total amount of lien the Department could claim. Accordingly, under a reasonable construction of the order, the personal injury court did not abridge the County's right to seek statutorily-mandated reductions to the lien.

The Department's alternative interpretation of the approval order would enlarge the scope of the County's financial obligation beyond what the parties had agreed in the settlement agreement—the lien amount for which Lugo is legally responsible. The authority of Lugo's guardian ad litem to compromise his action against the County was limited by the terms of the approved settlement agreement.[15] The Department's construction of the order approving the settlement would produce an anomalous result: The personal injury trial court conferred upon Lugo the right to require the County to pay the full amount of the Medi-Cal lien without the ability to seek reductions thereof, even though Lugo's guardian ad litem lacked statutory or contractual authority to request that relief from the court.

Additionally, we observe that if the Department's interpretation of the approval order were correct, and, as the Department insists, the County indeed "acquiesced" to the

---

[15] (See Code Civ. Proc., § 372, subd. (a)(3) ["The . . . guardian ad litem . . . appearing for any . . . person who lacks legal capacity to make decisions . . . shall have power, with the approval of the court in which the action or proceeding is pending, to compromise the same . . . or release or discharge any claim . . . *pursuant to that compromise*," italics added].)

21

decree's supposed requirement that the County pay the full amount of the lien, then the County arguably could be potentially liable for wasting public funds. (See Code Civ. Proc., § 526a, subd. (a) [authorizing a taxpayer suit to "restrain[ ] and prevent" the "waste of" public funds].) Specifically, the County would have assumed liability for a lien amount not authorized by statute.[16] (See *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 481–482 ["[P]ublic spending may qualify as waste [under Code Civ. Proc., § 526a] if it is ' "completely unnecessary," ' or ' "useless," ' or 'provides no public benefit.' "].)

        In sum, we decline to adopt the Department's construction of the personal injury court's approval order, and we hold that the order does not foreclose the County from seeking a reduction to the Medi-Cal lien at issue here. (See *West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1185 ["[T]he court 'should avoid an interpretation [of a contract] . . . which would result in an absurdity . . . .' "]; *People v. Lofchie* (2014) 229 Cal.App.4th 240, 251 [" ' "We must . . . avoid an interpretation [of a statute] that would lead to absurd consequences." ' "]; see also *Concerned Citizens Coalition of*

---

        **16** At one point in its appellate brief, the Department argues that "the portion of the settlement allocated to past medical expenses . . . equal[s] the full amount of those expenses," meaning there is no need for a court to utilize the *Ahlborn* formula or any other approach to reduce the amount of the Department's lien. This argument is predicated on the Department's assertion that the County agreed to forgo the right to seek a reduction of the lien. Because we reject the Department's construction of paragraph 10 of the settlement agreement (see Discussion, part B.1, *ante*), this argument fails as well.

22

*Stockton*, *supra*, 128 Cal.App.4th at p. 77 [holding that " 'the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing' "].)

## C.    We Express No Opinion on What Impact Each Party's Conduct Should Have on the County's Entitlement to Relief

In its appellate brief, the Department appears to argue that the County cannot secure equitable relief because it failed to notify the Department of the settlement agreement prior to court approval thereof.  The Department raises this argument in support of its position that the County may not "re-open[ ] th[e] settlement to the County's advantage."  Because we hold that neither the settlement agreement nor the order approving it bars the County from asking the trial court to reduce the Department's lien (see Discussion, part B, *ante*), it is not necessary to re-open the settlement to litigate the amount of the lien.

We recognize section 14124.76, subdivision (a) provides, "All reasonable efforts *shall* be made to obtain the [Department's] advance agreement to a determination as to what portion of a settlement, judgment, or award . . . represents payment for medical expenses, or medical care, provided o[n] behalf o[f] the beneficiary."  (See § 14124.76, subd. (a), italics added.)  We also acknowledge that this sentence immediately precedes language in the same subsection providing, "Absent the [Department's] advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision."  (*Ibid.*)

23

The Department, however, does not contend that if a party fails to make all reasonable efforts to obtain the Department's advance agreement, then section 14124.76, subdivision (a) bars that party from asking a court to reduce the Medi-Cal lien. The Department also does not argue that the County's alleged failure to provide notification of the settlement agreement prior to court approval gives rise to unclean hands or some other defense precluding the County's recovery as a matter of law. (See, e.g., 3 Cal. Affirmative Def. (2d ed. 2023) § 45:1 [" 'No one can take advantage of his own wrong.' Known as the . . . unclean hands doctrine, this equitable principle . . . [¶] den[ies] the plaintiff the equitable remedies that would otherwise be available in the circumstances," fns. omitted].) We thus do not address these issues further. (See *D.N.*, *supra*, 56 Cal.App.5th at p. 767.)

We likewise express no opinion on what impact, if any, the Department's decision to sue Lugo, allegedly without notice to the County, may ultimately have on the Department's ability successfully to maintain a defense against the County's recovery. (See, e.g., 3 Cal. Affirmative Def., *supra*, § 45:2 ["[T]here are instances in which the court may balance or weigh the wrongful conduct of plaintiff and defendant in determining whether to deny relief on grounds of unclean hands."].)

## DISPOSITION

We reverse the trial court's August 26, 2022 judgment of dismissal.  We remand this matter to the trial court with instructions to (1) vacate the June 8, 2022 order sustaining respondent's demurrer without leave to amend, and (2) issue a new order overruling respondent's demurrer.  Appellant is awarded its costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.

25